[No. 28098.  *En Banc.*  February 14, 1941.]

GEORGE PETERSEN, *Respondent,* v. M. L. GRAHAM
*et al., Appellants.*[1]

[1]Reported in 110 P. (2d) 149.

*Wright & Wright, E. W. Hoffman,* and *Eugene A. Wright,* for appellants.

*Mathew W. Hill* and *Lee L. Newman,* for respondent.

MAIN, J.—This action was brought to recover the sum of eight hundred dollars on account of alleged false and fraudulent representations made by the defendant M. L. Graham in a real estate transaction, and for an overcharge of three dollars for revenue stamps. The cause was tried to a jury, and resulted in a verdict in favor of the plaintiff in the sum of $773.80, with interest. The defendant moved for a judgment notwithstanding the verdict, and, in the

alternative, for a new trial, both of which motions were overruled. Judgment was entered upon the verdict, and the defendants appealed.

The appellant M. L. Graham will be referred to as though he were the only one of the appellants involved upon the appeal. The facts, in so far as they are not in dispute, and as the jury had a right to find them when they were in dispute, may be summarized as follows: June 22, 1936, the respondent, George Petersen, being then the owner of a tract of land in Kitsap county consisting of approximately twenty-four acres, entered into a contract to sell the same to James Somerville. The contract price was thirty-three hundred dollars, of which sum five hundred dollars was paid at the time the contract was made. The balance was to be paid in installments in the sum of one hundred dollars, the first of which was to be on October 20, 1936, and thereafter a like sum on or before the 20th day of every four months thereafter. After these recitals, the contract contained this provision:

"It is agreed that if, within three years from the date hereof, the party of the second part [Somerville] shall pay the entire balance then due in one payment, so that the entire payments made amount to $2500, exclusive of interest, the parties of the first part [respondent] will waive $800 on account of the purchase price."

This provision appears to have been put into the contract on account of the fact that the respondent had previously sold the property to Somerville, and, after a considerable sum had been paid, had forfeited it.

June 14, 1939, and a few days before the three-year period expired in which Somerville could take advantage of the waiver of the eight hundred dollars,

the appellant and one Alfred A. Knoernschild appeared at the office of Andrew J. Balliet, an attorney at law in Seattle, and stated to him, in effect, that the appellant had arranged with Frank W. Howe, the administrator of the estate of James Somerville, who had previously died, to loan the estate the sum necessary to enable it to take advantage of the eight hundred dollar waiver. Without consulting with the administrator and relying on the representations made to him, Mr. Balliet, who was the attorney for the estate, wrote a letter on that day to the respondent in which it was stated that the administrator of the Somerville estate was arranging to pay the balance in full upon the contract, and, after restating certain provisions thereof, the letter continued:

"Mr. Howe is making that arrangement with Mr. M. L. Graham, whom, it is believed, you know.

"The contract further provides that you shall furnish and deliver with the deed a policy of title insurance. That, will have to be ordered by you and should be done without delay. It may be ordered either in Port Orchard, or in Seattle.

"In order to protect Mr. Graham in providing the payment to be made to you, he wants the deed for the land to be made to him and the contract you now hold to be assigned to him."

On the 18th day of June, 1939, the appellant and Knoernschild went to the home of the respondent, which was a short distance from Kingston, in Kitsap county, and Knoernschild at that time introduced the appellant to the respondent. After some talk, they went to the week-end home of Mr. Balliet, which was not far distant, and the matter was there discussed. The particular point of the discussions appears to have been the waiver provision in the contract. The respondent was a man with little education and, apparently, rather slow of understanding, and

seemed not to understand the matter of the waiver. As the result of this conversation, Mr. Balliet wrote, in a blank space at the end of the contract, the following:

"Kingston, Wash., June 18, 1939
"In consideration of one dollar in hand I hereby extend the time for making the final lump sum payment from June 22, 1939, long enough to procure a policy of title insurance on the above described real property and the examination of the policy after it will have been issued not to exceed thirty (30) days. If the said policy of insurance shows a marketable title, I will deed the above described property to M. L. Graham upon he paying me within said 30 days $1600 in cash and assign to me [him] the contract for the sale of it, dated June 22, 1936, to James Somerville (now deceased).

"Witnessed                    George Petersen
   "A. C. Knoernschild.           Owner"

It will be observed that this writing extends the time thirty days in which the waiver provision of the contract may be taken advantage of, and provides that the respondent will deed the property to the appellant upon the payment, within thirty days, of sixteen hundred dollars in cash, and assign the contract. Mr. Balliet had not talked with the administrator of the Somerville estate with reference to the matter prior to this time. The administrator of the estate testified that he had made no arrangement by which the appellant was to loan any money to the estate.

June 25th, the respondent went to the summer home of Matthew W. Hill, an attorney at law, which was not far distant from respondent's home, and asked Mr. Hill to come over to his place and look at the contract. When Mr. Hill got to the home of the respondent, the appellant was there, with a prepared deed and a certificate of title. Mr. Hill read the original contract, the letter of Mr. Balliet to the respondent, and the

writing at the foot of the contract, and then engaged in a conversation with the respondent and the appellant. Mr. Hill testified that he was trying to find out a way in which the arrangement with the appellant could be set aside.

In the course of this conversation, Mr. Hill testified that the appellant repeatedly assured him that he was loaning the money to the Somerville estate so that it could take advantage of the waiver in the contract of sale, and that he relied on those representations. The documents, on their face, all appearing to be regular, and there appearing at that time no legal way that the transaction could be disturbed, Mr. Hill advised the respondent to sign the deed and assign the contract, which he did, and at the time the appellant gave the respondent a check in the sum of $1,556.50, or sixteen hundred dollars, as provided for in the writing of the 18th, less the cost of title insurance and seven dollars for revenue stamps.

A few days later, Mr. Hill, being in Port Orchard, the county seat of Kitsap county, on other business, examined the record in the Somerville estate and found no authorization had been given by the court to the administrator of the estate to borrow any money from the appellant. He thereupon notified the respondent to come to Port Orchard to see him, with the result that Mr. Hill advised him that he could either bring an action for rescission or one for damages. Thereafter, the present action was instituted, with the result as above stated.

The first and principal question to be considered upon this appeal is whether the evidence as to fraud in the transaction was sufficient to take the case to the jury. From the evidence, the jury had a right to find that, when the appellant and Knoernschild went to Mr. Balliet's office, it was represented

by them that the appellant was loaning the estate money in order that it might take advantage of the waiver provision in the contract, and that this statement was not true; that Mr. Balliet relied upon the statement; that the respondent believed that he was extending the time when he signed the writing of June 18th for the benefit of the estate, and did not know that the appellant was not doing so; that the appellant repeated the misrepresentations to Mr. Hill on the occasion mentioned, and that they were then also relied upon. It thus appears that there was evidence to sustain the verdict of the jury, unless one or more of the contentions of the appellant now to be noticed require a holding otherwise.

It is true the respondent testified that, when he called Mr. Hill to his home, he told him there was something wrong with the transaction. Mr. Hill testified that he had not any suspicion, when he advised the signing of the deed and the assigning of the contract, that there was anything wrong with it. The jury had a right to find that the respondent was referring to the matter of the waiver, and had a right to believe the testimony of Mr. Hill.

It is said by the appellant that the writing of June 18th, which is the extension of time document, was an independent agreement, and, therefore, there were no misrepresentations to the respondent until after the transaction with the appellant had been closed. The appellant invokes the rule that misrepresentations made subsequent to the closing of a transaction cannot be relied on for the purpose of setting it aside, as having been induced by fraud. That rule, however, is not here applicable, because, when the writing of June 18th was prepared and signed, it was but a link in the chain of events that began when the appellant and Knoernschild first approached the attor-

ney for the Somerville estate and made the representation as to loaning money to the estate. The respondent had a right to rely upon the representation made at that time as fraudulent.

■ Further, it is said that the respondent, having consulted Mr. Hill and having been advised to sign the deed and accept the check, and Mr. Hill not having made an investigation to ascertain the truth of the representations, cannot now take advantage of them. In view of the situation, as represented by the letter of Mr. Balliet, the statements of the appellant, and his assurance that he was loaning the money to the estate, we are of the view that Mr. Hill performed his full duty, as the situation then appeared to him. He certainly was not required to make an investigation as to the truth of the matters stated in Mr. Balliet's letter, he being the attorney for the estate. In this respect, the present case is not analogous to that of *Palmer v. Shields,* 71 Wash. 463, 128 Pac. 1051, where it is held that, where the plaintiff employed an attorney to make an investigation and acted upon his advice, after every opportunity to make such investigation, and made no complaint for three years thereafter, the action could not be maintained.

The trial court correctly overruled the motion for judgment notwithstanding the verdict.

■ We will now take up the other contentions of the appellant and will follow the order in which they appear in his opening brief. He says that instructions 7, 8-½, and 8-¾ are in conflict with instruction 8-¼. Instruction 7 is to the effect that the respondent was not obligated to part with title to the land referred to on the payment of sixteen hundred dollars less the cost of title insurance and revenue stamps, by anyone other than Mr. Howe, the administrator of the Somerville estate.

Instruction 8-½ is to the effect that the fact that the respondent signed the deed and assignment on June 25, 1939, on the advice of Mr. Hill, whom he had consulted, would not relieve the appellant of any liability if the jury found that Mr. Hill relied on the representations and the letter of Mr. Balliet, that the appellant knew of the contents of Mr. Balliet's letter and that Mr. Hill was relying thereon; and that they should further find that an ordinarily prudent and cautious individual would have relied upon the appellant's representations and Mr. Balliet's letter.

Instruction 8-¾ is to the effect that the fact that the respondent or Mr. Hill, in his investigation, may have, to some extent, relied upon Mr. Balliet's letter, which is in evidence, does not relieve the appellant of any liability if they should find that the appellant, or anyone acting for him, was responsible for its preparation, and if they should further find that he knew that reliance was placed on the statements contained therein, and that these statements were false.

Instruction 8-¼ is to the effect that, if the jury found from the evidence that there was no fraud in inducing the signing and delivery of the extension agreement, then the respondent would not be entitled to prevail, and the jury's verdict should be for the appellant except as to the item of three dollars for revenue stamps.

Instructions 7, 8-½, and 8-¾ bore upon the respondent's theory of the case. Instruction 8-¼ was with reference to the appellant's theory. Each party had a right to have its theory presented to the jury by proper instructions. We see no conflict between the first three instructions mentioned and the last one.

It is next contended that the court was in error in giving instructions 10 and 11. In instruction 10, the jury was told that, if they found that the ap-

pellant made the misrepresentation alleged, the fact that the same misrepresentation was made by someone else does not in any way release him from the liability of his misrepresentation, providing they should find that such misrepresentation, if any was made by the appellant, was the inducing cause of the respondent acting to his damage. Instruction 11 stated that one who ratifies and makes his own the fraudulent act of another becomes liable therefor.

The objection to these instructions is that there was no evidence upon which such instructions could be based. These instructions, apparently, were given to cover the situation when the appellant and Knoernschild first went to the office of Mr. Balliet. The latter, in his testimony, did not make it very clear whether the representations made at that time, to the effect that the appellant had arranged to loan money to the Somerville estate, were actually made by the appellant, or whether that statement was made by Knoernschild in the appellant's presence.

It is next contended that the court erred in giving instruction 13, which covered the matter of examining public records. The objection to this instruction is that it was inapplicable to the facts and because it conflicts with instruction 17. We see no conflict between the two instructions, and we are of the opinion that Mr. Hill, and through him the respondent, was not charged with notice of what the record of the estate in the office of the clerk of Kitsap county would show.

In *Crawford v. Armacost,* 85 Wash. 622, 149 Pac. 31, it was said:

"A party may rely upon a statement as to a fact made to him by another as a basis for a mutual engagement, where the facts are unknown to him but known to the other and are made for the purpose of inducing a reliance thereon, even though the statement is of

a fact concerning a matter of public record, the truth or falsity of which could be ascertained by an inspection of the public record.   [Citing authorities.]"

In support of that statement, a number of cases from this court were cited, and there can be no question about the rule.

It is next contended that there was error in instructions 8-¼, 17, 18, 19, and 21, because each of them concluded with the statement that, if the jury found certain facts, their verdict should be for the appellant, "except as to the item of $3.00 for revenue stamps not used by defendants, for which in any event plaintiff is entitled to judgment."   The evidence shows without dispute that, in the transaction, when the agreement was made between the respondent and the appellant as to the sixteen hundred dollars, there was deducted from that amount the cost of the title insurance and the seven dollars revenue stamps.   Later, it was ascertained that there was only four dollars in revenue stamps placed upon the deed.   There can be no question but that the respondent was entitled to what amounted to a directed verdict as to the three dollars excess.

It is next contended that the court erred in admitting certain testimony, and this has reference to the testimony of Mr. Balliet on cross-examination after he had been called as a witness for the appellant. He was asked whether it was his understanding that the appellant or anyone else could take advantage of the eight hundred dollar deduction other than the respondent.   Over objection, the witness was permitted to answer:   "Not without the consent of Mr. Howe, as administrator, unless he had procured from Mr. Howe the contract."   In support of this objection, the appellant invokes the rule that parol evidence

cannot be received to contradict, vary, add to, or substract from, the terms of a written instrument. There is no question about the rule, and, assuming that the testimony offered was violative thereof, it was not of such character as to be prejudicial.

It is finally contended that instruction 22 was erroneous because it told the jury that the respondent was entitled to interest, if the verdict was in his favor, upon the amount thereof from June 25, 1939, the time when the transaction was closed and the deed delivered from the respondent to the appellant. The appellant says that it was error to allow interest prior to judgment because this action was based upon an unliquidated claim. The action, as set out in the complaint, sought the recovery of eight hundred dollars, which was the amount covered by the waiver provision in the contract of sale. It was developed upon the trial that the payment of the sixteen hundred dollars by the appellant to the respondent, less the cost of title insurance and the revenue stamps, left a sum of $773.80, which would have been coming to the respondent if the contract had been carried out and the full purchase price of thirty-three hundred dollars paid. The ascertaining of this sum did not require evidence to establish it, but rested upon a mathematical computation; and for this reason the demand was a liquidated one. The fact that the respondent called a witness to testify as to the character of the twenty-four acre tract and its value does not change the character of the action from one which was based upon a liquidated claim to one which would be based upon an unliquidated claim.

In preparing this opinion, we have made little reference to the authorities cited in the appellant's brief and the rules which they support. The reason is that,

476

generally speaking, the propositions of law contended for by the appellant in his brief, as we view it, are not applicable to the facts in this case.

The judgment will be affirmed.

ALL CONCUR.

[1]Reported in 110 P. (2d) 154.