ROGERS, Justice.
 

 This is an appeal from a judgment dismissing the suit on an exception of no cause of action. The suit is one for a mandamus to compel the respondent, United Gas Public Service Company, to pay the relator, Arthur H. Brown, the sum of $4,967.25 for additional royalties under two mineral leases and for the refund of payments for severance taxes. The relator, Arthur H. Brown, died pending the hearing on the appeal and his widow and daughter, by proper motion, were made-parties appellant.
 

 Plaintiff’s demands, as set out in the-petition and annexed documents, are predicated on two gas leases, the first of which, was granted the Gulf Refining Company and assigned by it to the Palmer Corporation, which entered into an amended contract with plaintiff, and the second was-granted to M: A. Jones. The respondent,. United Gas Company, acquired both leases, by assignment, and, as lessee, produced gas-from the lands covered by the leases.
 

 The royalty clause relating to gas in-, each lease provides for payments to the-lessor as follows:
 

 Lease No. 1 (as amended): “% of the-value of such gas calculated at the prevailing market price at the wells on two* pounds pressure basis.”
 

 Lease No. 2: “one-eighth (%) of the value of such gas cálculated at the rate-of 3 cents per thousand cubic feet, corrected to two pounds above atmospheric pressure.”
 

 It appears from the recitals of the petition that the producers paid relator as-royalty for the gas produced from the wells' one-eighth of 3 cents per thousand cubic feet corrected to the pressure set forth in the leases but failed to pay relator anything as royalty on the gasoline extracted from the gas and sold by the-producer; and that the producers also deducted from the royalty paid the relator one-eighth of the severance taxes due the-State of Louisiana.
 

 
 *621
 
 ' The relator further alleges, on information and belief, that the market price of dry gas per one thousand feet corrected to two pounds above atmospheric pressure in Richland Parish, during the- years the gas was produced, was not less than 6 ■cents. '
 

 . The items of relator’s claim are set forth in Article 29 of the petition as follows:
 

 “Said producers have therefore withbeld payment from relator of. royalty due by virtue of said annexed leases, as follows:
 

 1/8 of
 
 3‡
 
 per 1000 cubic feet, of the gas produced under said leases as hereinabove recited, correct to 2 lb. above atmospheric pressure, totalling 761,-518,000 cubic feet........... $2,855.67
 

 1/8 of
 
 2‡
 
 per thousand cubic feet for royalty on gasoline.. 1,903.79
 

 Severance tax illegally withheld 207.79
 

 Total .................... $4,967.25”
 

 The prayer of the petition is for the issuance of a writ of mandamus directed to and commanding the- respondent to pay the relator what may be due relator “as royalty under the circumstances and facts hereinabove set forth,” and especially to pay relator the amounts covering the items referred to in Article 29 of the petition, which we have hereinabove quoted.
 

 From the allegations of the petition and the annexed documents, it clearly appears that the obligation here sought to be enforced by mandamus is an obligation created by, and resulting from, two written contracts.
 

 It is the settled jurisprudence of this State that the writ of mandamus does not lie to compel corporations to perform obligations arising simply from contracts. State ex rel. New Orleans v. New Orleans & C. Railroad Company, 37 La.Ann. 589; State ex rel. Pollock v. Equitable Life Assurance Co., 167 La. 342, 119 So. 71.
 

 Counsel for the relator does not dispute this well recognized rule of procedure, but he insists that relator is entitled to a writ of mandamus under the provisions of Act No. 64 of 1934.
 

 The statute provides in section 1 that it shall be unlawful for the holder of a mineral lease, or the purchaser of oil, gas or other minerals therefrom, to withhold payment from the lessor of any rentals, royalties or other sums due by virtue of the lease, when such lessor is the last record owner of the land or the mineral rights. Section 2 establishes the presumption that such last record owner is the true owner and that his lessee is lawfully entitled to all the minerals produced, unless and until a suit to test title is brought; further, that the purchaser of such minerals is fully protected in making payment to the lessor and lessee therefor under the conditions set forth in the statT ute. Section 3 imposes certain conditions relative to payments upon the purchasers of minerals prior to the date upon which the act is to go into effect. Section 4 authorizes the issuance of the writ of mandamus “to compel payment of what
 
 *623
 
 ever may be due to any party in interest under the circumstances hereinabove set out, or under any division order.”
 

 Obviously, the intention of the legislature in enacting the statute was to protect lessees and purchasers in their dealings with the last record owners of lands and mineral rights and, likewise, to protect the lessors against delays in receiving their royalties because of any defect in the title of the leased property, or because of any threat or purpose on the part of third persons to involve the title or lease itself in litigation. Actual filing of suit by such third persons is necessary to stop the operative effect of the terms of the act. It was so held by the Court of Appeal for the Second Circuit in the case of State ex rel. Boykin v. Hope Producing Co., 167 So. 506.
 

 As disclosed by the opinion, the relevant facts and issues in that case are similar to those presented in this case. Relator there sought a writ of mandamus pursuant to Act No. 64 of 1934 to collect additional royalties alleged to be due on gas and gasoline, under a lease providing for royalties on gas of “one-eighth of the value of such gas calculated at the rate of not less than three cents per thousand .feet, corrected to two pounds above atmospheric pressure,” it being admitted that relator had already been paid his royalties upon all gas produced at the stipulated minimum rate of 3 cents; and for the reimbursement of one-eighth of the severance taxes upon the gas produced, withheld by the lessee and paid to the state. In that case, as in this Case, the respondent denied and contested relator’s right to> further royalties under the terms of the-lease contract. The author of the opinion thoroughly analyzed the provisions of Act No. 64 of 1934 and correctly held that the-remedy of mandamus, authorized by the-statute, applied only when the demands sought to be enforced thereby are limited to amounts definitely fixed in the lease.. This decision was referred to and approved in State ex rel. Muslow v. Louisiana Oil Ref. Corp., La.App., 176 So. 686.
 

 The holding in those cases was approved by this Court in denying writs of certiorari ánd review that were applied for in theMuslow case, with the statement that the decision in that case was correct. The decision in the Muslow case, on certain constitutional points, was affirmed by the Supreme Court of the United States in Arkansas Fuel Oil Company v. Muslow, 304 U.S. 197, 58 S.Ct. 832, 82 L.Ed. 1287.
 

 In the more recent case of State ex rel. Bean v. Caddo Crude Oil Purchasing Corp.,. 189 So. 333, the Court of Appeal for the Second Circuit reaffirmed its holdings in the prior cases of Boykin and Muslow.
 

 We think the holdings in those-cases are correct and that they furnish a. complete answer to the relator’s contention that he is entitled to the benefit of the-summary process authorized by Act No_ 64 of 1934.
 

 It is suggested in the brief filed on behalf of the relator that even if it be held that relator is not entitled to summary
 
 *625
 
 process, he should be granted relief- by-ordinary process, because he prays for judgment for a specific amount and for general relief.
 

 A reference to the prayer of the petition discloses that relator asks only for the issuance of a writ of mandamus directing and commanding the respondent to pay to relator certain sums of money. Citation is not prayed for and no judgment whatever against respondent is asked, alternatively or otherwise.
 

 In support of his contention, relator cites and quotes paragraph three of tbe syllabus of Kinder v. Scharff, 125 La. 594, 51 So. 654, 655, reading as follows:
 
 “A
 
 prayer for general relief authorizes a court of equity jurisdiction to render such judgment as the nature and justice of the case may require.” An examination of the opinion rendered in that case discloses, however, that the underlying reason for the decision was that “the prayer for a decree annulling and setting aside the sale as having been made in fraud of creditors,” etc., “authorizes the lesser relief of decreeing the sale to be fraudulent,” etc. The lesser decree there granted was included in, and was of a similar nature to that prayed for, presenting an entirely different situation from the one presented in this case.
 

 The character of plaintiff’s action is fixed by the prayer of his petition. Rudd v. Land Co., 188 La. 490, 177 So. 583.
 

 It can not be disputed that a party entitled' to a summary as well as an ordinary remedy may resort to either at his option. But, having elected as to the form" of his proceeding, “a prayer for general relief does not authorize a change from one form of action to another. The action must stand or fall as originally brought.” To decide otherwise, it was held in South Louisiana Land Co. v. Riggs Cypress Co., 119 La. 193, 43 So. 1003, 1005, “would be going beyond the scope of a prayer for general relief.”
 

 In New Orleans & N. E. Railroad Co. v. Louisiana Construction Co., 49 La. Ann. 49, 21 So. 171, it was held, as shown by the syllabus by the Court: “No matter how serious the complaints are in a petition, unless the prayer asks for relief by a proper judgment under proper procedure, the suit will be dismissed, on the plea of no cause of action.”
 

 An examination of the body of that opinion shows that while the Court considered the averments of the petition exhibited serious grievances and complaints, since no redress was asked which the Court' could grant, the exception of no cause of action was therefore maintained.
 

 Relator’s contention that in any event he should be granted the right of a trial by ordinary process must be rejected.
 

 For the reasons assigned, the judgment , appealed from is affirmed.
 

 O’NIELL, C. J., and LAND, J., absent.