SAMUEL, Judge.
Begnaud No. 1 Well was drilled and completed by a group of lessees on land held by them in the Cankton Field in St. Landry Parish. On July 1, 1955, these lessees and the respondent herein entered into a contract under which the former agreed to sell and deliver to respondent for resale in interstate commerce, and the respondent agreed to purchase, all gas produced from lessees’ estates in the Cankton Field. Un *851 der this contract the vendors were obligated to sell the gas on a firm basis for twenty years, to deliver such gas at a specified pressure, to meet quality specifications, and to a certain method of measurement of gas delivered.
Acting on the application of a third party and under authority of the Louisiana Conservation Statutes, the Conservation Commissioner issued an order force pooling, as of May 1, 1957, the land on which Begnaud No. 1 is located with adjacent property, some of which adjacent property is subject to mineral leases held and owned by relator herein. As a result of this uniti-zation order the property under lease to relator became entitled to an undivided .164146 of the production from the well. Thereafter, the Commissioner fixed the amortized cost of the “unit well” at $164,-453.56 and ordered that the same be borne pro rata by all owners of working interests in the unit. Relator refused to pay its production of the well cost and has filed suit in the Parish of East Baton Rouge seeking to have this last order declared null and void. Relator has neither signed nor ratified the gas purchase contract under which respondent is buying the gas produced by Begnaud 'No. 1, nor is there any contractual relationship of any kind between relator and respondent or between relator and the lessees or lessors of the land upon which the well is located.
Relator has instituted this suit pursuant to LSA-R.S. 30:105 to 30:107 for a writ of mandamus to compel respondent to pay directly to relator the purchase price attributable to .164146 of the gas received from and after May 1, 1957, by the respondent from Begnaud No. 1. The respondent filed an exception of no right or cause of action and an answer.
The trial court rendered judgment in favor of relator, overruling the exception, commanding respondent to pay to relator the purchase price attributable to .164146 of the gas in accordance with the latter’s prayer, and stipulating that all such payments were to be computed in the same manner as provided in the gas purchase contract between respondent and the aforesaid lessees. Respondent has suspensively appealed from this judgment.
We are of the opinion that the exception should have been maintained and there is therefore no need for a determination of other questions presented to us on the merits.
LSA-R.S. 30:105 reads as follows:
“It shall be unlawful for a person acquiring mineral rights from, or mineral rights under a lease by, the last record owner and holding under an instrument sufficient in terms to transfer title or for a person purchasing mineral products to withhold payment of any rentals, royalties or other sums due to a party holding an interest in the minerals, or under the lease.”
LSA-R.S. 30:107 reads as follows:
“A writ of mandamus to compel payment of whatever may be due to a party in interest under the circumstances set out in R.S. 30:105-30:106, or under any division order, may be issued by a court of competent jurisdiction against a person liable for the payment claimed. These proceedings shall be tried by preference.”
We have been able to find no cases arising under or interpreting the above quoted revised statutes 30:105 and 30:107. The source of these sections was Act 64 of 1934. Section 1 of this act, the source of LSA-R.S. 30:105, reads as follows:
“Be it enacted by the Legislature of Louisiana, That it shall be unlawful for any person, firm or corporation, or the agent, employee or officer of any such persons, firm or corporation, when
“1. such person, firm or corporation has leased any real property, or has acquired the mineral rights therein by lease or otherwise, from the last record *852 owner thereof, as of the date of such lease and under whom said lessee or producer claims, holding under any instrument sufficient in terms to transfer title to such property or said mineral rights, for the purpose of developing the same for oil, gas or other minerals; or
“2. is holding any such lease under any assignment thereof; or
“3. is producing for his or its account, or is producing and selling to others, any such oil, gas or other minerals under such lease or under any assignment thereof; or
“4. has purchased from any such lessor, or any person holding under such lessor, or from the lessee or any person holding under such lessee, any oil, gas or other minerals produced from said leased property,
to withhold payment from the lessor or lessee, or any person holding from either or both of them, of any rentals, royalties or other sums whatever, including the purchase price of any such oil, gas or other minerals, due by virtue of such lease to any such lessor or lessee or person holding from either or both of them.”
Section 4 of Act 64 of 1934, the source of LSA-R.S. 30:107, reads as follows:
“That a writ of mandamus to compel payment of whatever may be due to any party in interest under the circumstances hereinabove set out, ’ or under any division order, may be issued by any court of competent jurisdiction against any person, firm or corporation liable for the payment claimed; and the proceedings shall be tried by preference.”
It is clear from a reading of Act 64 of 1934 in its entirety, including Section 2 thereof (now LSA-R.S. 30:106), which is not quoted herein that the legislative intent in adopting the original act was to protect lessors and lessees and those holding under or purchasing from them and that the right to resort to the summary proceeding, which the statute chooses to call mandamus, to compel payment of rentals, royalties or other sums due was limited to demands which embraced an amount or amounts definitely fixed in a lease or other contract. See State ex rel. Boykin v. Hope Producing Co., La.App., 167 So. 506; State ex rel. Brown v. United Gas Public Service Co., 197 La. 616, 2 So.2d 41.
While it is true that when the legislature adopted the revised statutes, the intent of the lawmakers was to clarify and codify rather than change the law from that which had existed at the time, it is possible that LSA-R.S. 30:105 may have validly changed the law which was its source. See Perkins v. Brothers of Christian Schools, La.App., 71 So.2d 400; Gay v. United Benefit Life Ins. Co., 233 La. 226, 96 So.2d 497; City of Alexandria v. La Combe, 220 La. 618, 57 So.2d 206; 15 La.Law Rev. 472.
The latter portion of Section 105 makes it unlawful to withhold payment of any rentals, royalties or other sums due to any “party holding an interest in the minerals, or under the lease”, whereas the corresponding portion of Section 1, Act 64 of 1934 makes unlawful only such withholding from a lessor, lessee or person holding from either or both of them. It would therefore appear that under LSA-R.S. 30:105 withholding payment to the relator herein would be unlawful (provided such payment could be interpreted as coming within the phrase “of any rentals, royalties or other sums due”) whereas under Section 1 of the original act relator would be excluded because it did not hold from either or both “such lessor or lessee”. However, we do not pass on the validity or effect of this apparent change for the reason that it is unnecessary to do so in order to arrive at the conclusion reached herein.
For there can be no such question about LSA-R.S. 30:107 and Section 4 of the original act. Except for the changes of a few *853 unimportant words these two are identical. As applied to the instant case their important wording is to the effect that a writ of mandamus may be obtained “to compel payment of whatever may he due to any party in interest”. It is quite clear to us that what has been prayed for by the relator and granted by the judgment is not that which is due to it.
Relator has no right whatsoever against the respondent except such as may arise out of the force pooling order issued by the Commissioner. This order entitles relator only to a fixed percentage interest in the production of the well. As far as relator’s rights are concerned it purports to order nothing further than this. It does not require that relator sell its proportionate share of production to the respondent nor does it require respondent to purchase the same; it sets no price to be paid or received for the gas and imposes no obligations on relator except the requirement that it pay its pro rata share of the cost of the unit well. Relator is free to receive its portion of the production and to dispose of that portion in any way it sees fit. The statute (LSA-R.S. 30:10, subd. A(l)) authorizes the force pooling of lands only if the Commissioner finds the same to be necessary to prevent waste or to avoid drilling unnecessary wells. The order must assure each owner the receipt of his just and equitable share of production, which share is considered as if it had been produced from such owner’s tract by a well drilled thereon. 1 Summers O. & G.2d Ed. 308. The statute does not give the Commissioner authority to make a contract forcing the sale and purchase of minerals after they have been produced.
There has been called to our attention, and we have been able to find, only one case which allowed a royalty owner to proceed by mandamus against a pipeline purchaser from the lessee. This is the case of State ex rel. Bean v. Caddo Crude Oil Purchasing Corp., La.App., 189 So. 333. That suit was instituted by an owner and others against the purchaser. The claim was for a fractional part of a definite and fixed amount of money held by the respondent. The point at issue here was not raised by any of the litigants nor discussed or considered by the court. That case therefore is not authority for the present relator’s position.
We do not hold that relator has no claim for its gas, either that which has been produced and disposed of or that which will be produced in the future. Quite obviously it does. But that claim must be enforced by a proper action against the proper parties.
For the reasons assigned the judgment appealed from is annulled and reversed, the exception of no right or cause of action is maintained and the suit is dismissed, relator to pay all costs.
Reversed.