136 So.2d 55

### STATE ex rel. SUPERIOR OIL COMPANY

v.

### TEXAS GAS TRANSMISSION CORPORATION.

No. 45684.

Dec. 11, 1961.

Rehearing Denied Jan. 15, 1962.

1. The Potestative Condition in Louisiana, by Wood Brown; see also Comment, 13 La.L.Rev. at p. 240, by J. Denson Smith.

F. P. Jones, Jr., Houston, Tex., Wm. W. Bell, Jr., Lake Charles, Milling, Saal, Saunders, Benson & Woodward, H. H. Hillyer, Jr., New Orleans, for relator.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, A. J. Waechter, Jr., New Orleans, for defendant.

HAWTHORNE, Justice.

In its petition in this suit relator, the Superior Oil Company, prays that pursuant to R.S. 30:105–107 a writ of mandamus issue herein commanding the respondent, Texas Gas Transmission Corporation, "to pay forthwith to Relator the purchase price attributable to .164146 of the whole of the gas received from and after May 1, 1957, by the said defendant from well known as Begnaud No. 1 Well situated in the Southeast Quarter of Section 25, Township 8 South, Range 3 East, St. Landry Parish, Louisiana, or to show cause to the contrary * * *". Respondent filed an exception of no cause or right of action aimed at the form of this action, contending that relator is not entitled to proceed by mandamus because under the facts and circumstances of this case the provisions of R.S. 30:105–107 are not available. With full reservation of its rights under this exception respondent filed an answer alleging that under the Natural Gas Act [1] the only persons legally entitled to sell gas from Begnaud No. 1 well and receive payment for it were the sellers named in a gas purchase contract. The exception was referred to the merits by the trial judge, and after trial the exception was overruled and judgment was rendered for the relator as prayed for. On appeal the Court of Appeal, Fourth Circuit, reversed the judgment of the lower court, sustained the exception of no cause or right of action, and dismissed the suit. See 128 So.2d 849. On application of relator this court granted a writ.

On lands under lease to them Joseph M. Jones, Texas Gas Exploration Corporation, and others drilled and completed a producing gas well called Begnaud No. 1 well, which is in the Cankton Field of St. Landry Parish. Thereafter, on July 1, 1955, Jones and associates entered into a con-

---

[1] The provisions relied upon in brief are Section 2(6) (15 U.S.C.A. 717a), Section 4(c) (15 U.S.C.A. 717c), Section 7(c) (15 U.S.C.A. 717f [c]), and Section 21(a) (15 U.S.C.A. 717t[a]).

tract with the respondent, Texas Gas Transmission Corporation, in which Jones and associates agreed to sell, and the respondent agreed to buy for resale in interstate commerce, gas produced from the Begnaud well. This contract, which was to remain in full force and effect for a term of 20 years, fixed the price at a graduated scale, with periodic specific increases. The contract provided for quantity and quality of gas, pressure, point of delivery, demand, statement, bill, and payment notice to the individual designated therein, and contained other provisions which we need not mention here.

Because the sale of the gas to the respondent by Jones and associates was for resale in interstate commerce, Jones and associates filed the gas purchase contract with the Federal Power Commission and obtained a certificate of public convenience and necessity. Subsequently revised rate schedules were filed with the commission in the name of Joseph M. Jones, and pursuant to notice given by Jones he was designated by order of the commission as the operator of the natural gas producing properties covered by the contract with Texas Gas Transmission Corporation. In conformity with the rate schedules filed with the commission and pursuant to the provisions of the contract, the respondent, Texas Gas Transmission Corporation, has paid Joseph M. Jones, operator, through his agent, Texas Gas Exploration Corporation,[2] for all gas purchased by it under the gas purchase contract.

Relator is the holder and owner of mineral leases covering lands adjacent to those which are under lease by Jones and associates and from which the gas is being sold to the respondent, Texas Gas Transmission Corporation. After the well on those properties designated as Begnaud No. 1 had been in production for some time, the Conservation Department on application of a third party entered an order effective May 1, 1957, force-pooling the property covered by the gas purchase contract with adjacent property, some of which was subject to mineral leases owned by relator. Pursuant to this order relator became entitled to an undivided .164146 of the production from the Begnaud No. 1 well. The Conservation Commissioner also entered an order fixing the amortized cost of the unit well at $164,453.56 and ordering that this cost be borne pro rata by all owners of working interests in the unit.[3]

2. Texas Gas Exploration Corporation is a wholly owned subsidiary of the respondent, Texas Gas Transmission Corporation.
3. The commissioner found that at the date of the creation of the unit the reservoir was 19½ per cent depleted and that the cost chargeable to the unit for the unit well should be 80½ per cent of the original cost. Relator has refused to pay its proportion of the well cost and has filed suit in the district court of East Baton Rouge Parish seeking to have the order declared null and void.

Although we are not concerned with it in this suit, there is a dispute between relator, Superior Oil Company, and Texas Gas Exploration Corporation with regard to the amount, if any, due by the relator for drilling costs; and the respondent admits that it has received and purchased certain production from the Begnaud No. 1 well, that relator has made amicable written demand for immediate payment for its proportionate share in this production, and that it has not paid relator anything. As stated previously, however, respondent has paid the operator through his agent, Texas Gas Exploration Corporation, for all gas purchased by it under the gas purchase contract.

Relator is undoubtedly entitled to be reimbursed for the value of its share of the gas. But the first question here posed for our decision is whether relator is entitled to the benefit of the summary process authorized by R.S. 30:105-107, the pertinent parts of which read:

"§ 105.   *Withholding payment of rentals or royalties, when unlawful*

"It shall be unlawful * * * for a person purchasing mineral products to withhold payment of any rentals, royalties or other sums due to a party holding an interest in the minerals, or under the lease.

"§ 106.   *Right to revenues pending test of title; effect of recorded lease*

"A. * * * The lessor, royalty owner, lessee or producer or persons holding from them shall be entitled to all minerals produced or to their proceeds, unless and until a suit testing title of the land or mineral rights embraced in the lease is filed in the district court of the parish in which the property is located.

"B. A purchaser of minerals produced from a recorded lease granted under these conditions shall be fully protected in making payment to any party in interest under the lease unless and until the above mentioned suit should be filed and the purchaser receives notification of it by the usual postal registry receipt card. The purchaser shall not be entitled to this protection unless he has recorded in the conveyance records of the parish in which the land is located, notice that the minerals have been and will be bought by him.

"§ 107.   *Mandamus to compel payment*

"A writ of mandamus to compel payment of whatever may be due to a party in interest under the circumstances set out in R.S. 30:105-30:106, or under any division order, may be issued by a court of competent jurisdiction against a person liable for the payment claimed. These proceedings shall be tried by preference."

The source of these sections of the Revised Statutes is Act 64 of 1934, and relator concedes that the act and these sections are substantially the same.

In State ex rel. Brown v. United Gas Public Service Co., 197 La. 616, 2 So.2d 41, 44, this court was called upon to decide whether the relator there was entitled to summary process under the provisions of Act 64 of 1934. In that case relator was seeking to compel the respondent to pay a certain sum for additional royalties under mineral leases which had been granted by him covering two tracts of land and for the refund of payment for severance taxes. One of these leases provided for payment to the lessor of one-eighth of the value of the gas calculated at the prevailing price at the well on two pounds' pressure basis. The other lease provided for payment of one-eighth of the value of the gas calculated at the rate of 3¢ per thousand cubic feet, corrected to two pounds above atmospheric pressure. Respondent had paid to relator as royalty for the gas produced from the wells one-eighth of 3¢ per thousand cubic feet corrected to the pressure stipulated in the leases. Relator took the position that during the years the gas was produced, the market price of the gas per thousand cubic feet corrected to two pounds above atmospheric pressure was not less than 6¢, and under this contention he sought summary process to compel the respondent to pay him the difference between the 3¢ per thousand cubic feet already paid and the 6¢ per thousand cubic feet alleged to be the market price.

This court after citing and discussing the case of State ex rel. Boykin v. Hope Producing Co. (La.App.), 167 So. 506, stated that that case correctly held "that the remedy of mandamus, authorized by the statute, applied only when the demands sought to be enforced thereby are limited to amounts definitely fixed in the lease". This court then cited other Court of Appeal cases and concluded that the holdings in those cases "furnished a complete answer to relator's contention that he is entitled to the benefit of the summary process authorized by Act No. 64 of 1934".

In denying relator the right to mandamus in the Brown case this court was acting in accord with the general principle that due to the drastic and extraordinary character of the writ courts act with caution in respect to it and award it only in cases where it clearly appears that under the law it ought to issue, that the right to such a writ must be clear, and that it will not be granted in doubtful cases. See 34 Am.Jur., Mandamus, sec. 36, p. 831. The Court of Appeal in the Boykin case, supra, observed that mandamus is an extraordinary remedy, that resort to it to compel or enforce unliquidated obligations was never intended or admitted, and that relator in that case was not entitled to it unless this form of action was sustained by the 1934 act.

■ Under R.S. 30:105 it is unlawful for a purchaser of mineral products to

withhold payment of any rentals, royalties, or *other sums due* to a party holding an interest in the minerals or under the lease, and under R.S. 30:107 a party in interest may obtain a writ of mandamus to compel payment of whatever *may be due* him. Under the jurisprudence interpreting Act 64 of 1934, the "sums due" or "whatever may be due" must be certain, definite, and fixed amounts in order to entitle persons seeking to collect these sums to a writ of mandamus.

■ Relator's prayer, as stated above, is that a writ of mandamus issue to compel the respondent "to pay forthwith to Relator the purchase price attributable to .164146 of the whole of the gas received from and after May 1, 1957, by the said defendant from the well known as Begnaud No. 1 Well * * *, or to show cause to the contrary". The question then is whether under the facts of this case there is a certain, definite, and fixed amount due relator so as to entitle it to a writ of mandamus ordering the respondent to pay this definite and fixed amount.

Relator says that by filing this suit and accepting the judgment of the district court it has acquiesced in and agreed to the price paid by respondent, Texas Gas Transmission Corporation, in the gas purchase contract between respondent and Jones and associates; or, stated somewhat differently, that respondent should be commanded to pay to relator an amount for gas attributable to relator's interest in the production computed at the price fixed in the gas purchase contract. Of course if it may use the purchase price fixed in this contract, to which it is not a party and by which it is not bound, there is no question that the amount due it is fixed with certainty, and relator is entitled to summary process.

As we view the matter, the relator is not entitled to use the purchase price fixed in the gas purchase contract entered into between respondent and Jones and associates to establish that there is a certain, definite, and fixed amount due so as to entitle it to summary process. To permit this would be to allow relator to fix unilaterally the price the court should order the respondent to pay in this proceeding, and permit it to take advantage of a price named in the contract without accepting the other terms and conditions of the contract. As already stated, this contract was to remain in full force and effect for a term of 20 years, the price to be paid for the gas was fixed at a graduated scale, and quantity and quality of gas, pressure, point of delivery, demands, statements, bills, and payment notices to the individuals designated therein were provided for. Since relator is not a party to this contract, it is not bound by any of the contract's terms and conditions, and under

these circumstances it cannot unilaterally avail itself of the purchase price fixed in the contract. There is therefore no certain, definite, and fixed amount due relator so as to entitle it to summary process.

On the merits respondent takes the position that since the gas purchased under the contract is being sold in interstate commerce and since relator does not possess a certificate of public convenience and necessity from the Federal Power Commission and has not filed a gas purchase contract or rate schedule with the commission, there is no way by which it can purchase the gas from relator without violating the provisions of the Natural Gas Act and the regulations of the Federal Power Commission and exposing itself to the penalties set forth in that act. Since we have concluded that relator is not entitled to summary process under the provisions of R.S. 30:105–107, we need not consider this contention of respondent on the merits.

For the reasons assigned the judgment of the Court of Appeal is affirmed. Relator, Superior Oil Company, is to pay all costs.

FOURNET, C. J., concurs in part and dissents in part and assigns written reasons.

McCALEB, J., dissents with written reasons.

HAMLIN, J., absent from the city.

FOURNET, Chief Justice (concurring in part and dissenting in part).

I am in full accord with the views expressed in the majority to the effect that "Under R.S. 30:105 it is unlawful for a purchaser of mineral products to withhold payment of any rentals, royalties, or *other sums due* to a party holding an interest in the minerals or under the lease, and under R.S. 30:107 a party in interest may obtain a writ of mandamus to compel payment of whatever *may be due him*." I do not, however, subscribe to the conclusion that the amount due relator is not fixed and certain and that, therefore, under the holding in State ex rel. Brown v. United Gas Public Service Company, 197 La. 616, 2 So.2d 41, it was not entitled to resort to the mandamus remedy in this case, for a mere reading of the Brown case clearly reveals it does not support this conclusion as the amount there sought to be recovered was neither certain, fixed, nor definite, whereas the contrary is true in the instant case.

In the Brown case (for the recovery of *additional* royalties under two mineral leases as well as the refund of payments for severance taxes deducted from the amounts actually paid relator) the producers of gas wells on property covered by two mineral leases paid the relator as roy-

alty for the gas so produced "one-eighth of 3 cents per thousand cubic feet corrected to the pressure set forth in the leases,"[1] whereas, according to relator's allegations, predicated upon information and belief, "the market price of dry gas per one thousand feet corrected to two pounds above atmospheric pressure in Richland Parish, during the years the gas was produced, was not less than 6 cents." Inasmuch as such allegation was denied by the respondent, the court properly concluded this claim was neither definite nor certain and relator was without right to employ the mandamus proceeding to compel payment of the additional sums it contended were due under the lease provisions set out in Footnote No. 1. (The emphasis has been supplied by me.)

In the instant case, however, pursuant to an order of the Commissioner of Conservation of the State of Louisiana, certain duly recorded mineral leases owned by relator were force-pooled with the property on which the Begnaud No. 1 well was brought in as a producer, and in this order compelling the integration of the leases the interest of the relator in the entire production from that well *was not only specifically stated to be .164146, but Joseph M. Jones,* designated operator of

the well by the Federal Power Commission, *actually sold the entire production from the well to the respondent* through his agent, the Texas Gas Exploration Corporation, a wholly owned subsidiary of respondent, *for a fixed and definite price.*

It is therefore obvious that the interest of the relator in the entire production from the Bagnaud Well No. 1 was certain and that it was sold for a fixed price. Consequently, there was nothing indefinite or uncertain with respect to the amounts due the relator for its interest in the entire production from this well as nothing was left to speculation. In these circumstances, it was unlawful, under the plain provisions of the law, for the respondent, as the purchaser of this entire production, to withhold from the relator the proportion of the purchase price represented by this .164146 interest and the latter was therefore entitled to compel such payment by mandamus proceedings.

The conclusion reached by the majority, in my opinion, has so emasculated the provisions of R.S. 30:105, et seq. as to render them ineffective for all practical purposes.

McCALEB, Justice (dissenting).

---

1. The royalty clause in the first lease provided for payments to the relator as follows: "⅛ of the value of such gas calculated at the prevailing market price at wells on two pounds pressure," and,

in the second lease at "one-eighth (⅛) of the value of such gas calculated at the rate of 3 cents per thousand cubic feet, corrected to two pounds above atmospheric pressure."

When the Commissioner of Conservation issued his order force-pooling the property on which relator holds a mineral lease with the property on which the Begnaud No. 1 well is situated, he made an admintrative finding of fact that the Begnaud well was draining gas from the property under lease to relator and also fixed the interest of relator in the production to be .164146 of the whole. This administrative finding imposed, in my opinion, a legal obligation on the defendant, as purchaser of the gas, to pay relator for its portion of any of the gas it thereafter took under its contract with the operator of the well. Its failure to do so was violative of the express provisions of R.S. 30:105 which declares that "It shall be unlawful * * * for any person *purchasing* mineral products to *withhold payments* of any rentals, *royalties or other sums* due to a party *holding an interest in the minerals, or under [a] lease*." (Emphasis mine). And a writ of mandamus was the proper remedy under R.S. 30:107 for the enforcement of payment.

However, the majority say that, since relator has no contract with the defendant, it is not entitled to employ the provisions of R.S. 30:105 and R.S. 30:107 and that it is relegated to an ordinary action. But I find no provision of the statute (R.S. 30:105, 106, 107) which requires that the legal right sought to be enforced emanate from a *contractual* obligation. On the

contrary, the provisions of R.S. 30:105–107 simply refer to mineral rights which have been established and are incontestible, irrespective of whether they stem from a contract or from an administrative finding, as in this case. Indeed, the settled jurisprudence is that ordinarily, the writ of mandamus does not lie to compel corporations to perform obligations arising from contracts but has, as its function, the compelling of performance of a duty imposed by law. See State ex rel. Pollock v. Equitable Life Assurance Soc., 167 La. 342, 119 So. 71 and State ex rel. Brown v. United Gas Public Service Co., 197 La. 616, 2 So.2d 41, which is relied on heavily by the majority for its ruling herein.

There is nothing in the Brown case which militates against the views I entertain. This is clearly pointed out in the dissenting opinion of Chief Justice Fournet herein. The Brown case is authority only for the proposition that, unless liability is established (I say either by contract or legal obligation) and fixed, resort may not be had to the writ of mandamus provided for by R.S. 30:107.

The majority opinion further holds that relator cannot compel payment of the purchase price of the gas which relator agreed to pay the well operator under its contract for the reason that relator is not a party to the contract. In this deduction I readily agree but this circumstance does not jus-

tify, in my opinion, the holding that relator's claim against defendant is not fixed, certain and liquidated.

Relator's position, as I understand it, is simply that it is willing to accept from the defendant payment for its portion of the gas which the defendant has taken, the price fixed in defendant's contract with the operator. Of course, defendant cannot, for the reasons given by the majority, be required to pay its contract price, but upon rejection of relator's offer, it becomes liable, in my view, for the market price of the gas on the date of the taking. The determination of the amount of the payment to be ordered in such instance would be merely a matter of computation since the percentage of production, to which relator is entitled to payment, is specifically fixed in the Commissioner's order.

A demand for the market price of a fixed percentage of an object is not, in my opinion, an uncertain or indefinite demand. It is well settled that "A claim which can be determined with exactness from the parties' agreement or by arithmetical process on application of definite rules of law, * * *" is a liquidated claim. See Yin v. Amino Products Co., 141 Ohio St. 21, 46 N.E.2d 610, 614 and Petersen v. Graham, 7 Wash.2d 464, 110 P.2d 149, 154, cited by Black's Law Dictionary, 4th Ed. See also Black's Law Dictionary defining a liquidated demand and citing with approval

Rifkin v. Safenovitz, 131 Conn. 411, 40 A.2d 188, 189, where it is stated that an amount claimed is a liquidated demand "[if] it is susceptible of being made certain in amount by mathematical calculations from factors which are or ought to be in possession or knowledge of the party to be charged."

I respectfully dissent.