552 So.2d 81 (1989)
John M. TAYLOR and John Marvin Taylor, Jr., Plaintiffs-Appellants,
v.
WOODPECKER CORPORATION, et al., Defendants-Appellees.
No. 87-1379.
Court of Appeal of Louisiana, Third Circuit.
November 8, 1989.
Writ Granted January 26, 1990.
George Griffing, Jonesville, & Mangham, Hardy, Rolfs, Bailey & Abadie, George W.
*82 Hardy, III, Lafayette, for plaintiff-appellant.
Nathan M. Calhoun, Vidalia, for third party plaintiff-appellee.
J.P. Mauffray, Jena, for exceptors/appellees.
J.W. Seibert, III, Vidalia, Patrick L. Durusau, Jena for defendant-appellee.
Before DOMENGEAUX, GUIDRY and FORET, JJ.
GUIDRY, Judge.
In this suit, plaintiffs seek an accounting for the oil and gas produced from the Smith-Wentworth, VUA, J. H. Allen Number 1 well, allocable to a 22.85 acre tract of land owned by them and situated within the limits of Unit 71B of the Nebro-Hemphill Field as established by Louisiana Conservation Commission Order Number 24-D, dated July 3, 1942, which was re-established by Order Number 781-F effective January 1, 1986.
In their suit plaintiffs demanded an accounting for their share of all oil and gas produced from the date of first production of the Allen well from, among other defendants, Ashland Oil Co., Inc. (hereafter Ashland), the purchaser of the production from the J. H. Allen No. 1 well. All defendants excepted to plaintiffs' demands urging that plaintiffs were without a right of action to seek an accounting for any period prior to December 15, 1986. The trial court maintained defendants' exceptions and dismissed plaintiffs' demands for the period from date of first production to December 15, 1986. We reversed the trial court judgment, overruled the exceptions and remanded this matter to the trial court for further proceedings. Taylor v. Woodpecker Corporation, 539 So.2d 1293 (La.App. 3rd Cir.1989). The defendants, Allen heirs, Succession of E. C. Wentworth and Ashland made timely application to the Louisiana Supreme Court for writs of certiorari. The Supreme Court denied the applications filed by the Allen heirs and the Succession of E.C. Wentworth but granted the application of Ashland and remanded this matter to this court for briefing and argument on the issue of whether plaintiffs have a right of action or cause of action against Ashland, the oil purchaser. Taylor v. Woodpecker Corporation, 545 So.2d 1042 (La. 1989) and 545 So.2d 1043.
Simply stated, the issue on remand is, if plaintiffs' petition states a cause of action for an accounting for their share of unit production under the conservation act, do they, as owners of unleased mineral interests situated within the limits of a Commissioner's unit created pursuant to La.R.S. 30:1 et seq, have a right of action or a cause of action against the purchaser of production from the unit well to recover their proportionate share of unit production?
As we understand its argument, Ashland urges as a basis for its exceptions of no right and no cause of action that: (1) the allegations of ultimate fact set forth in plaintiffs' petition, as amended, do not state a cause of action against Ashland for an accounting for unit production under the conservation act because the Commissioner's orders numbered 24, 24-D and 781-F do not by their terms pool and integrate the separately owned tracts in Unit 71B for allocation of production. Ashland also urges that plaintiffs' petition does not state a cause of action in tort or for recovery under the theory of unjust enrichment; (2) no contractual or legal relationship exists between plaintiffs and Ashland such as would obligate Ashland to account to plaintiffs for the oil purchased by it; (3) La.R.S. 30:10(3) clearly places the duty to account for unit production on the unit operator and not the purchaser; and, (4) Ashland cannot be forced to account to plaintiffs by reason of the special protection afforded purchasers of minerals by La.R.S. 31:210. For the reasons which follow, we find no merit in any of these contentions.

THE SUFFICIENCY OF PLAINTIFF'S PETITION AS AMENDED
The peremptory exception of no cause of action tests the legal sufficiency of the petition and is triable on its face. When considering such an exception, the allegations of fact are conceded to be true *83 and generously interpreted so as to maintain the petition's sufficiency, thus affording plaintiff the opportunity to present his evidence. See Hero Lands Company v. Texaco, Inc., 310 So2d 93 (La.1975), and cases therein cited.
Our examination of plaintiffs' petition as amended, in light of the above settled principle, prompts the conclusion that plaintiffs' petition sets forth a cause of action for an accounting for the oil and gas produced from the Smith-Wentworth, VUA J. H. Allen Number 1 Well, the unit well for Unit 71-B of the Nebro-Hemphill Field, allocable to a 22.85 acre tract of land owned by plaintiffs which is situated within the limits of said unit.
As a basis for its exception, Ashland urges that the Commissioner's orders, referred to in plaintiffs' petition, are somehow deficient in that, although drilling units were validly created, the orders failed to pool and integrate the separately owned tracts within Unit 71-B for allocation of production. In response to this argument, suffice it to say that the intent, meaning and effect of the Commissioner's orders cannot be inquired into on an exception of no cause of action but is a matter for consideration on the merits.
In sum, according plaintiffs' well pleaded allegations of fact a generous interpretation, their petition states a cause of action for an accounting for their share of unit production under the conservation act. Considering this conclusion, we need not consider Ashland's alternative arguments that the Taylors' pleadings fail to state a cause of action in tort or for recovery under the theory of unjust enrichment.

RELATIONSHIP BETWEEN PLAINTIFFS AND ASHLAND
Our jurisprudence has long recognized the right of an unleased mineral owner to seek and recover his share of unit production from the purchaser of such minerals. As stated in State ex rel Muslow v. Louisiana Oil Refining Corporation, 176 So. 686, 690-691 (La.App. 2d Cir.1937), writ refused November 2, 1937:
"It is not disputed that as a rule the true owner of the soil has a right of action against the purchaser of oil from one who first reduced it to possession. The right of the true owner to hold the purchaser or converter of the oil for its market value is a legal one, created and continued by lawful authority and, of course, may be modified, abridged, or entirely abolished by the same or a coequal power." (Emphasis ours)
In the same vein, our Supreme Court in State ex rel Superior Oil Company v. Texas Gas Transmission Corporation, 242 La. 315, 136 So.2d 55 (1961), recognized the right of a lessee, other than the unit operator, to seek reimbursement from the purchaser of production, albeit not by the summary process authorized by La.R.S. 30:105-30:107.[1] In that case, the court majority stated:
"Relator is undoubtedly entitled to be reimbursed for the value of its share of the gas. But the first question here posed for our decision is whether relator is entitled to the benefit of the summary process authorized by R.S. 30:105-107..."
In State ex rel Superior Oil Company, the late Justice McCaleb, dissenting from the majority's conclusion that summary process was not available against the purchaser, made the following pertinent comment:
"When the Commissioner of Conservation issued his order force-pooling the property on which relator holds a mineral lease with the property on which the Begnaud No. 1 well is situated, he made an administrative finding of fact that the Begnaud well was draining gas from the property under lease to relator and also fixed the interest of relator in the production to be .164146 of the whole. This administrative finding imposed, in my opinion, a legal obligation on the defendant, as purchaser of the gas, to pay relator for its portion of any of the gas it thereafter took under its contract *84 with the operator of the well ..." (Emphasis ours)
Louisiana Civil Code article 526 states:
"The owner of a thing is entitled to recover it from anyone who possess or detains it without right and to obtain judgment recognizing his ownership and ordering delivery of the thing to him."
The comments to this article, which became effective January 1, 1980, explain:
"(a) This provision is new. It expresses a rule inherent in the Louisiana Civil Code of 1870 and partially expressed in the Louisiana Code of Civil Procedure and in Louisiana jurisprudence. It does not change the law.
(b) In all civil law systems, the owner of a thing may bring a revendicatory action (action en revendication) for the recognition of his ownership and for the recovery of the thing from anyone who possesses or detains it without right. 1 Planiol, Civil Law Treatise, Part 2, Sec. 2445 et seq.; Yiannopoulos, Civil Law Property Secs. 124, 125 and 126 (1968); See specifically, Greek Civil Code Arts. 1094, 1095 and B.G.B. Secs. 985 and 986.
... In Louisiana, the revendicatory action for the recovery of movables is an innominate real action. For Louisiana jurisprudence and doctrine, see Yiannopoulos, Civil Law Property Secs. 135 and 145 (1968); Bouchard v. Parker, 32 La. Ann. 535 (1880). The expressions revendication and action en revendication have been used in the French text of the Code of Practice of 1825. These expressions have been translated in the English texts of the two codes as `reclamation' and `action for the ownership' (or claim for restitution)."
We believe that the rule inherent in our law, which was codified in La.C.C. art. 526, was the basis for the court's rulings which recognized a right of action and a cause of action by the mineral owner against the purchaser of minerals in State ex rel Muslow and State ex rel Superior Oil Company.
In the instant case, to paraphrase Justice McCaleb, when the Commissioner of Conservation issued his order including plaintiffs' property within the limits of Unit 71-B of the Nebro-Hemphill Field, he made an administrative finding that the unit well was draining minerals from the unleased property belonging to plaintiffs. This administrative finding imposed a legal obligation on Ashland, as purchaser, to pay plaintiffs for their portion of the minerals it thereafter took by purchase from the unit operator. Our careful research has disclosed no statutory or jurisprudential authority to the contrary.

EFFECT OF LA. R.S. 30:10A(3)
La.R.S. 30:10A(3) provides as follows:
"(3) If there is included in any unit created by the commissioner of conservation one or more unleased interests for which the party or parties entitled to market production therefrom have not made arrangements to separately dispose of the share of such production attributable to such tract, and the unit operator proceeds with the sale of unit production, then the unit operator shall pay to such party or parties such tract's pro rata share of the proceeds of the sale of production within one hundred eighty days of such sale."
We agree with Ashland that the quoted provision imposes an obligation on the unit operator to pay to the unleased mineral interest owners their proportionate share of unit production. However, we do not construe such provision as limiting the unleased mineral owners' cause of action for payment or reimbursement solely against the unit operator. Had the legislature intended such cause of action to be solely and exclusively exercised against the unit operator, this intention could have been and should have been clearly expressed. In sum, we conclude that the legislature did not intend, when it adopted La.R.S. 30:10A(3), to abrogate the legal obligation imposed upon purchasers of unitized minerals to pay the rightful owners for their portion of the minerals it takes by purchase from the mineral operator.

*85 EFFECT OF LA. R.S. 31:210
La.R.S. 31:210 provides as follows:
"A purchaser of minerals produced from a recorded lease granted by the last record owner holding under an instrument translative of title to the land or mineral rights leased is fully protected in making payment to any party in interest under the lease unless and until a suit is filed testing title to the land or mineral rights embraced in the lease and the purchaser receives notification of it by registered mail. The purchaser is not entitled to this protection unless he has filed for registry in the conveyance records of the parish in which the land subject to the lease is located notice that the minerals produced have been and will be purchased by him."
The quoted statute affords no protection to Ashland in the case sub judice. The statute protects a purchaser of minerals from a recorded lease granted by the last record owner, holding under an instrument translative of title, upon filing a notice of purchase for registry. In the instant case, Ashland purchased minerals from the alleged unit operator of a unit which included unleased mineral interests. Where forced pooling of two or more separately owned tracts is directed by the Commissioner of Conservation, a well drilled thereon is considered as having been drilled upon each separately-owned mineral tract within the unit and the owners of such minerals share pro rata in production from the unit in the proportion that their mineral acreage bears to the total unit area. Although La.R.S. 31:210 may afford protection to Ashland for the proportionate share produced from the Allen lease, it is afforded no protection by the statute for the proportionate share of the minerals allocable to the unleased mineral interests owned by plaintiffs.
Ashland urges that it is afforded the protection of La.R.S. 31:210 because Conservation Commission orders numbered 24 and 24-D were not recorded in LaSalle Parish. Ashland argues that since these orders were not recorded in LaSalle Parish, it was afforded no notice thereof and, under such circumstances, the production must be considered as having come solely from the Allen lease and having complied with the filing of notice pursuant to R.S. 31:210, it is protected as the purchaser of minerals produced from recorded leases granted by the last record owners. We express no opinion regarding the effect of the failure of the Commissioner of Conservation to record the orders except to note that when orders numbered 24 and 24-D were adopted, there was no statutory requirement for recordation of the Commissioner's orders. Prior to the adoption of Act 516 of 1952 (La.R.S. 30:11.1) there was no statutory provision requiring recordation of the Commissioner's orders creating drilling or production units. In any event, we conclude that, insofar as the unleased Taylor interests are concerned, La. R.S. 31:210 is of no avail to Ashland irrespective of whether or not the Commissioner's orders were recorded. La.R.S. 31:210 by its terms is intended to protect a purchaser of minerals produced from a recorded lease by the last record owner against the claims of third persons asserting an interest or an adverse claim to the mineral interests covered by the recorded lease, as was the case in Muslow. It is not intended to protect a purchaser of minerals belonging to unleased mineral interest owners situated within a Commissioner's unit, as was the case in State ex rel Superior Oil Company.
For these reasons, the exception of no right and/or no cause of action filed by Ashland Oil Company is overruled and this matter is remanded to the trial court for further proceedings consistent with the views expressed in our prior opinion reported at 539 So.2d 1293 (La.App. 3rd Cir.1989) and as expressed in this opinion. The costs of these proceedings on remand to this court are taxed to Ashland Oil Company. All other costs are to await the final disposition of this matter.
REMANDED.
NOTES
[1] La.R.S. 31:210-31:212 are a redrafted version of former La.R.S. 30:105-30:107 (1950).