ELLIS, Judge.
This suit is brought by Lillie Mae Bell Richardson, individually and as the natural tutrix of her minor children, Daisey Bell Richardson and Van Richardson, Jr., for damages arising out of an automobile accident in which her husband was involved on June 17, 1963, in East Baton Rouge Parish. It appears from the record that on that date plaintiff’s husband, Van Richardson, Sr., was struck from the rear by an automobile operated by defendant, Walter L. Ward III, while he was stopped in his lane of traffic, waiting for a vehicle ahead of him to make a left turn.
As a result of the accident, Richardson received minor personal injuries. In July, 1963, Richardson executed, for a recited consideration of $404.60, a full release of claims arising out of the said accident. The date on the release is obscured. On July 2, 1963, Van Richardson, Sr., died. According to the testimony in the record, the immediate cause of his death was a heart attack.
On July 9, 1963, a draft for $440.60, in payment of the above mentioned release, was drawn to the order of Van Richardson and forwarded to his home. This draft was never endorsed or cashed by Mr. Richardson’s heirs, nor was it tendered back to the defendant, Aetna Insurance Company, until the date of the trial, September 27, 1966.
*329 In their petition, plaintiffs claim not only-damages for the physical injuries suffered by Van Richardson, Sr., in the accident, but also seek damages for his death, claiming that there was a causal connection between the accident and the heart attack from which he died. The defendants have introduced the release, which was signed by Van Richardson, Sr., and claim that it stands in full satisfaction for the claim and personal injuries suffered by him in the accident. They further claim that there was no causal connection between the accident and Mr. Richardson’s death.
After trial on the merits, the district court rendered judgment for $982.90 in favor of plaintiffs, representing compensation for the personal injuries and special damages incurred as a result of the accident of June 17, but denied recovery for Mr. Richardson’s death. From the above judgment, plaintiffs took a devolutive appeal, and defendants have appealed suspensively.
Dr. C. E. McConnell, who was Richardson’s treating physician, testified that he saw Richardson on March 18, 1963, and at that time found that he was suffering from cardiac enlargement and some evidence of heart failure as well as definite evidence of arteriosclerotic heart disease, for which he put Richardson on digitalis and some other drugs.
He saw him again on June 17, 1963, the date of the accident. At that time, he diagnosed a cervical strain, for which he prescribed heat. At the time of the June 17 visit, Dr. McConnell did not notice that Richardson was particularly perturbed or excited about the accident. He did not believe that the trauma resulting from the accident could have aggravated his heart condition in any way, although he also stated that if a person such as Richardson became extremely excited or anxious because of an accident that it could have aggravated a heart condition. However, he was of the opinion that if the excitement was going to cause a fatal heart attack, the attack would have occurred at the time ■ of the accident. Dr. McConnell didn’t note any complaint at the time of the accident which he related to the heart condition.
Dr. Chester A. Williams, Jr., coroner of East Baton Rouge Parish, saw Richardson after his death and concluded he had died of a heart attack. He was unable to venture any opinion as to there being a causal connection between the accident and the death.
There is testimony from lay witnesses to the effect that Richardson was not feeling very well after the accident, and that his neck was hurting. There is also some testimony to the effect that he complained of chest pain after the accident. The record shows that he died while sitting in a chair at his place of employment, where he worked as a night watchman.
The trial court found that plaintiffs had failed to prove a causal connection between the accident and the subsequent death of Van Richardson, Sr. In view of the above testimony, we are in full accord with this holding.
The most serious point in this case is that of the binding effect of the release, which was executed by Van Richardson, Sr., shortly before his death. There is no attack on Richardson’s capacity to execute the release. Neither can it be questioned that, had Richardson lived and the draft been sent to him at the same time, the release would have been binding on him. See Tooke v. Houston Fire and Casualty Insurance Company, 122 So.2d 109 (La.App. 2 Cir. 1960), and cases cited therein. The question which we must decide is whether or not the death of Richardson in the interim between the execution of the release and the receipt of the consideration will defeat the release. Plaintiffs maintain that the release is, in effect, an offer to settle his claim made by Richardson to The Aetna Insurance Company, but that he died prior to the acceptance of his offer and there was not, therefore, a binding contract between the parties.
*330 It is true that a release must be viewed as a contract under our law. See Blades v. Southern Farm Bureau Casualty Ins. Co., 95 So.2d 209 (La.App. 1 Cir. 1957) ; Cole v. Lumbermens Mutual Casualty Company, 160 So.2d 785 (La.App. 3 Cir. 1964). Before there can be a contract, there must be an offer and an acceptance. Article 1798, Louisiana Civil Code.
Therefore, it would appear that in resolving the question in this case, it is necessary to know the authority of the insurance adjuster who obtained the release. If he was, in fact, acting as the agent of the insurance company and was empowered by them to make an offer of settlement, then the contract would be complete by the execution of the release, this being an acceptance of the offer on the part of the claimant.
On the other hand, if the adjuster is not empowered to act for the company, then 'the release would have to be accepted by the company before it could be binding <on them. In that case, the release would be an offer on the part of the claimant and would not be binding until accepted by the company, by virtue of payment made pursuant thereto.
Under the provisions of Article 1810 of the Civil Code, an offer is vitiated by the death of the offeror prior to the acceptance thereof.
The record is devoid of any evidence as to the authority the adjuster had to bind the company. Because this issue of fact is determinative of the case on its merits, we feel that the interest of justice would best be served by remanding it to the trial court for the taking of evidence thereon and for final determination in accordance with the views herein expressed.
All costs of this appeal are to be shared by the parties hereto.
Reversed and remanded.