539 So.2d 1293 (1989)
John M. TAYLOR and John Marvin Taylor, Jr., Plaintiffs-Appellants,
v.
WOODPECKER CORPORATION, et al., Defendants-Appellees.
No. 87-1379.
Court of Appeal of Louisiana, Third Circuit.
March 15, 1989.
Rehearing Denied April 12, 1989.
*1294 George Griffing, Jonesville, and Broadhurst, Brook, Mangham & Hardy, George W. Hardy III, Wm. F. Bailey, Lafayette, for plaintiffs/appellants.
Nathan M. Calhoun, J.W. Seibert III, Vidalia, J.P. Mauffray, Patrick L. Durusau, Jena, for defendants/appellees.
Ella A. Bradford, Jena, in pro per.
Lena A. Hudspeth, Jena, in pro per.
Before GUIDRY, LABORDE and KING, JJ.
GUIDRY, Judge.
In this suit, plaintiffs seek an accounting for the oil and gas produced from the Smith-Wentworth, VUA, J.H. Allen Number 1 well, allocable to a 22.85 acre tract of land owned by them and situated within the limits of Unit 71B of the Nebro-Hemphill Field as established by Louisiana Conservation Commission Order Number 24-D, dated July 3, 1942, which was re-established by Order Number 781-F effective January 1, 1986. In their suit, plaintiffs demanded an accounting for their share of all oil and gas produced from the date of first production of the Allen well. Defendants excepted to plaintiffs' demands urging that plaintiffs were without a right of action to seek an accounting for any period prior to December 15, 1986. The trial court maintained defendants' exception of no right of action and dismissed plaintiffs' demands for an accounting for the period from date of first production to December 15, 1986. Plaintiffs appealed.
John M. Taylor[1] and John M. Taylor, Jr., owners of property in Township 7 North, Range 3 East, LaSalle Parish, brought suit on May 16, 1986, against Woodpecker Corporation and E.C. Wentworth.[2] The Taylors sought cancellation of an oil, gas and mineral lease originally executed in favor of M.L. Nichols which was subsequently assigned to defendant, Woodpecker, on the ground that Woodpecker failed to operate the leased property prudently and for the mutual benefit of lessors and lessee. Specifically, plaintiffs alleged that Woodpecker breached its obligation as lessee by allowing the drilling and production of the Allen well without any allocation of production to that portion of plaintiffs' property situated within Unit 71B. In this suit, plaintiffs also sought an accounting from E.C. Wentworth and others, the operators of the well, for the oil and gas produced from that portion of Unit 71B (22.85 acres) owned by petitioners from the date of first production of the well. By amended and supplemental petition, Ashland Oil Incorporated and Placid Oil Company, purchasers of production from the Allen well, were named as defendants. Judgment was sought against them for an accounting and for monetary damages equal to the value of the oil and gas removed from the petitioners' property together with legal interest, costs and attorney's fees.
In December of 1986, plaintiffs and Woodpecker compromised the lawsuit between them by Woodpecker's execution of a release (see Appendix 1) of the Taylor lease in its entirety retroactive to the date of first production of the Allen well. Subsequently, on joint motion of plaintiffs and defendants, Woodpecker and Placid Oil, plaintiffs' suit was dismissed with prejudice as to those defendants reserving to plaintiffs the right to pursue their demands against the remaining defendants.
Following the dismissal of Woodpecker and Placid, the remaining defendants filed numerous exceptions, all of which were denied except the exception of no right of action filed by the ancillary executor of the succession of E.C. Wentworth, Ashland Oil *1295 and the various Allen parties[3] to which we previously referred.
On appeal, plaintiffs urge that:
"The trial court erred in finding no right of action in plaintiffs' request for an accounting from the date of first production of the J.H. Allen No. 1 Well."
The trial judge, in written reasons, concluded that the Taylor mineral lessee, Woodpecker, was the owner of the minerals on the land burdened by the lease, within the intendment of La.R.S. 30:3(8),[4] and that, as such, it had the exclusive right of action against the operator for an accounting for all unit production allocable to the Taylor 22.5 acre tract from date of first production to December 15, 1986, i.e., the date on which Woodpecker executed a release of the Taylor lease. The trial judge concluded that the release from Woodpecker put the landowners (plaintiffs) back into the status of mineral owners under La.R.S. 30:3(8) only from the date of the release. In reaching this conclusion, he stated:
"WOODPECKER had the exclusive right to drill and produce minerals from its leased acreage and also enjoyed the exclusively [sic] right to appropriate the production therefrom for itself and the Plaintiffs. Additionally, WOODPECKER enjoyed the exclusive right to demand and sue for the proportionate share of any unit production allocated to it as owner of the minerals under the tract in question. See Louisiana Revised Statutes 30:3(8).
By definition and by usage, a release discharges obligations. It is not an assignment in that it does not transfer credits, rights or claims to a third person as required by Louisiana Civil Code art. 2642. Therefore it is liberative rather than acquisitive. The only obligations, if any, owed by the SUCCESSION OF WENTWORTH and ASHLAND OIL COMPANY were owed to WOODPECKER as owner of the minerals. When the Plaintiffs released WOODPECKER without an assignment of the rights held by WOODPECKER, the release had the legal effect of releasing the Defendants as well...."
For the reasons which follow, we find clear error in the trial court's conclusion that, as a result of the agreement between Woodpecker and plaintiffs, the latter did not acquire whatever rights Woodpecker had to seek an accounting from the date of first production of the Allen well.[5]
The agreement between Woodpecker and the plaintiffs, attached as Appendix 1, provides in pertinent part as follows:
"This release, as to those lands that are in Unit 71B, is retroactive to the date of first production of the Smith-Wentworth, J.H. Allen #1 Well located in Section 27, T 7 N R 3 E, LaSalle Parish, Louisiana ...". (Emphasis ours).
A casual reading of the agreement (Appendix 1), when considered together with the circumstances surrounding its execution, leaves little doubt regarding the intention of the parties. The obvious purpose for the language quoted above was to vest in the Taylors the sole right to seek an accounting for the oil and gas produced from Unit 71B and allocable to the 22.5 acre Taylor tract from the date of first production. In our view, it makes little difference that the parties chose to accomplish this purpose by couching the language of their contract as a retroactive release rather than a sale transfer or assignment by Woodpecker of its right as former mineral lessee to seek an accounting for unit production for the period prior to the release. As stated in In re Pan *1296 American Life Insurance Company, 88 So.2d 410 (La.App. 2d Cir.1956):
"... According to Corpus Juris Secundum, the word "assignment" has a comprehensive meaning and in its most general sense is a transfer or making over to another of the whole of any property, real or personal, in possession or in action, or of any estate or right therein ...
The same authority declares:
`Any language, however informal, if it shows the intention of the owner of the property or chose in action to transfer it, and sufficiently identifies the subject matter, will be sufficient to vest the property therein in the assignee ...'
See 6 C.J.S., Assignments, §§ 1a, 2b(8), 52. The foregoing legal principles are applicable in this state. See Strudwick Funeral Home, Inc., v. Liberty Industrial Life Insurance Company, Inc., La. App.1937, 176 So. 679, 681...."
In a later case, our brethren of the Second Circuit explained:
"Pertinent to the question of the form of assignments, ... is the following article of the LSA-Civil Code:
Article 2642:
'In the transfer of credits, rights or claims to [against] a third person, the delivery takes place between the transferrer and the transferree by the giving of the title.'
Numerous judicial interpretations of the above article are to be found cited in the annotations thereto. These cases hold that no special form or words are necessary in order to constitute a valid assignment nor is it necessary that such an assignment be in writing."
Rolf v. Lewis, 165 So.2d 12 (La.App. 2d Cir.1964). Our brethren of the Fourth Circuit indicated their approval of the foregoing in Producing Manager's Company, Inc. v. Broadway Theater League of New Orleans, Inc., 288 So.2d 676 (La.App. 4th Cir.1974).
In Whittington v. Sowela Technical Institute, 438 So.2d 236 (La.App. 3rd Cir. 1983), writs denied, 443 So.2d 591 and 443 So.2d 592 (La.1983), a panel of this court stated: "[u]nder our civilian tradition a release is viewed as a contract. Richardson v. Ward, 202 So.2d 327 (La.App. 1st Cir. 167), writ refused, 251 La. 389, 204 So.2d 573 (1967)".
The Louisiana Supreme Court, in Lambert v. Maryland Casualty Company, 418 So.2d 553 (La.1982), rehearing denied, stated:
"Contracts must be construed in such a way as to lead to logical conclusions and to give effect to the obvious intention of the parties. St. Ann v. American Insurance Companies, 182 So.2d 710 (La.App. 4th Cir.1966). They must be interpreted in a common-sense fashion, according to the words of the contract their common and usual significance. LSA-C.C. Art. 1946. A cardinal rule in the construction of contracts is that the contract must be viewed as a whole and, if possible, practical effect given to all its parts, according to each the sense that results from the entire agreement so as to avoid neutralizing or ignoring any of them or treating them as surplusage. LSA C.C. Art. 1955; Polozola v. Garlock, Inc., 343 So.2d 1000 (La.1977); Reuter v. Reuter's Succession, 206 La. 474, 19 So.2d 209 (1944); Solomon v. Hickman, 219 So.2d 330 (La. App. 1st Cir.1969); Crow v. Southern Natural Gas Company, 210 So.2d 596 (La.App. 2d Cir.1968), writ refused, 252 La. 834, 214 So.2d 160 (1968). Some effect is to be given to every word or clause if possible for a court may not impute to the parties the use of language without meaning or effect. American Mfg. Corp. v. National Union Fire Ins. Co., 203 La. 515, 14 So.2d 430 (1942); Gautreaux v. Harang, 190 La. 1060, 183 So. 349 (1938); Solomon v. Hickman, supra; Bruno v. McCabe, 71 So.2d 245 (Orl.App.1954).
When there is a doubt as to the true sense of the words of a contract, they may be explained by referring to other words or phrases used in the same contract. LSA-C.C. Art. 1948. Terms that present two meanings must be taken in the sense most congruous to the matter of the contract. LSA-C.C. Art. 1952."
Woodpecker and the other grantor-signatories of the agreement have not questioned *1297 its validity or intended effect. The words of the Woodpecker-Taylor contract clearly and explicitly conveys to plaintiffs all rights that Woodpecker et al would have had on the date of first production of the Allen well. We find the retroactive transfer of all rights to be the true intent of all parties as evidenced by the words of the contract, and that such construction leads to no absurd consequences and that any other interpretation would contravene the intent of the parties. Finally, such agreement is effective against third parties.
Accordingly, for the reasons stated, the judgment appealed from is reversed insofar as it dismisses plaintiffs' demand for an accounting for the time period between the date of first production of the Allen well and December 15, 1986. Further, the exception of no right of action filed by the Ancillary Executor of the Succession of E.C. Wentworth, Ashland Oil and the Allen parties is overruled. The case is remanded to the trial court for further proceedings consistent with the views expressed. Costs of this appeal are assessed against appellees, Ashland Oil, Inc. and the Succession of E.C. Wentworth.
REVERSED AND REMANDED.

APPENDIX 1

*1298 
NOTES
[1] John M. Taylor died June 12, 1986 and John M. Taylor, Jr. and Frank S. Taylor were substituted as parties plaintiff for the deceased.
[2] E.C. Wentworth died during the pendency of these proceedings. An answer was filed by J.W. Seibert III, the ancillary testamentary executor of the Succession of E.C. Wentworth.
[3] The "Allen parties" are the numerous lessors of E.C. Wentworth. They were joined in this suit as third party defendants by Ashland Oil.
[4] La.R.S. 30:3(8) states:

"`Owner' means the person who has the right to drill into and to produce from a pool and to appropriate the production either for himself or for others."
[5] We express no opinion regarding the trial court's conclusion that a mineral lessor has no right of action against a unit operator to seek an accounting for the lessor's share of unit production since the exclusive right in that regard vests in the mineral lessee. Considering the decision we reach in this case, any discussion of this issue would be purely academic.