562 So.2d 888 (1990)
John M. TAYLOR and John Marvin Taylor, Jr.
v.
WOODPECKER CORPORATION, et al.
No. 89-C-2801.
Supreme Court of Louisiana.
June 4, 1990.
Rehearing Denied June 28, 1990.
*889 Nathan M. Calhoun, Calhoun, Murray & McLemore, Vidalia, for Ashland Oil Inc. defendant-applicant.
George Griffing, Jonesville, for Taylor plaintiff-respondent.
Lisa D. Hanchey, Randall A. Karr, George W. Hardy, III, Mangham, Hardy, Rolfs & Abadie, Lafayette, for Woodpecker Corp. defendant-respondent.
Joseph Wilson, Gaharan & Wilson, Jena, for Woodpecker Corp., defendant-respondent.
J.W. Seibert, III, Vidalia, for Wentworth defendant-respondent.
J.P. Mauffray, Jr., Jena, for Joseph Allen defendant-respondent.
SHORTESS, Justice Pro Tem.
The issue in this case is whether a party claiming rights as an unleased mineral interest owner in a pooled drilling unit, who has made no arrangements to separately dispose of the share of unit production attributable to his land, has a right and/or cause of action against a purchaser of unit production to recover the value of his share.
In order to prevent waste of Louisiana's oil and gas resources and avoid the drilling of unnecessary wells, the legislature has given the Commissioner of Conservation the authority to establish drilling units. A drilling unit is the maximum area which may be efficiently and economically drained by one well. LSA-R.S. 30:9(B). One such drilling unit is Unit 71B, established in LaSalle Parish by Louisiana Conservation Commission Order Number 24-D on July 3, 1942. This unit contains approximately 40 acres of land, including a 22.85-acre tract owned by the original plaintiffs, John M. Taylor and John M. Taylor, Jr.[1] The remainder is owned by various other parties (the Allen parties). The Taylors claim that order 24-D effectively pooled the mineral interests in the separate tracts in Unit 71B under the authority of LSA-R.S. 30:10, which states in pertinent part:
A. When two or more separately owned tracts of land are embraced within *890 a drilling unit which has been established by the commissioner as provided in R.S. 30:9B, the owners may validly agree to pool their interests and to develop their lands as a drilling unit.
(1) Where the owners have not agreed to pool their interests, the commissioner shall require them to do so and to develop their lands as a drilling unit, if he finds it to be necessary to prevent waste or to avoid drilling unnecessary wells.
E.C. Wentworth was the mineral lessee of the tracts owned by the Allen parties. Wentworth also owned leases on adjacent tracts outside of Unit 71B. On June 15, 1979, Wentworth executed a document purporting to pool his lease interests and form a voluntary pooled unit which included the Allen tracts in Unit 71B. Wentworth drilled a successful well for his voluntary unit, known as the Smith-Wentworth VUA, J.H. Allen No. 1 Well (the Allen well). The well is located within Unit 71B on one of the Allen tracts, and Wentworth is the operator of the well. Ashland Oil purchased production from the well.
On May 16, 1986, the Taylors filed a suit against Wentworth[2] and their mineral lessee, Woodpecker Corp. The Taylors sought to dissolve the mineral lease held by Woodpecker on the grounds that Woodpecker failed to prudently maintain the lease and allowed drilling and production of a well within the confines of Unit 71B without securing any allocation of production to their property. The Taylors also sought an accounting from Wentworth for production from the Allen well attributable to them. The petition was later amended to allege that Ashland had violated order 24-D by accepting, transporting, and purchasing oil and gas produced under the order, and that Ashland should be liable to them for an accounting and damages equal to the value of the oil and gas removed from their property. Ashland then filed a third party petition against the Allen parties.
On Dec. 15, 1986, Woodpecker executed a release of the Taylor mineral lease retroactive to the date of first production of the Allen well. The defendants and third party defendants filed exceptions, including exceptions of no cause or right of action. The trial court maintained the exception of no right of action for the period from the date of first production of the Allen well until the date of the Woodpecker release, finding that the Woodpecker release did not transfer or assign Woodpecker's rights to the Taylors, and that Woodpecker as lessee was the proper party in interest to bring suit for the period prior to the release. The court of appeal reversed the trial court and overruled the exception of no right of action. Taylor v. Woodpecker Corp., 539 So.2d 1293 (La.App. 3d Cir. 1989). Ashland, Wentworth, and the Allen parties applied to this court for writs of certiorari.[3] Only Ashland's writ was granted, and the case was remanded to the court of appeal for briefing and argument on the issue of whether the Taylors have a right of action or a cause of action against Ashland. Taylor v. Woodpecker Corp., 545 So.2d 1042 (La.1989). On remand, the court of appeal overruled Ashland's exception of no right and/or no cause of action. Taylor v. Woodpecker Corp., 552 So.2d 81 (La.App. 3d Cir.1989).
Plaintiffs claim that the retroactive release executed by Woodpecker places them in the position of being an unleased interest owner from the date of first production of the Allen well. The legislature has specifically set out the rights of unleased *891 interest owners in LSA-R.S. 30:10(A)(3) which provides:
If there is included in any unit created by the commissioner of conservation one or more unleased interests for which the party or parties entitled to market production therefrom have not made arrangements to separately dispose of the share of such production attributable to such tract, and the unit operator proceeds with the sale of unit production, then the unit operator shall pay to such party or parties such tract's pro rata share of the proceeds of the sale of production within one hundred eighty days of such sale.
Ashland argues that by the statute's terms, the Taylors' only action is against the unit operator, E.C. Wentworth, for a pro rata share of the proceeds of the sale of production. The Taylors respond that the jurisprudence of this state has long recognized the right of an unleased mineral owner to seek and recover his share of unit production from the purchaser of such minerals, and that if the legislature had intended LSA-R.S. 30:10(A)(3) to limit the unleased mineral owner's action to one solely against the unit operator, that intention would have been more clearly expressed. For the reasons given below, Ashland's argument is the better one.
In support of their claim against Ashland, the Taylors cite two cases which were decided prior to the enactment of LSA-R.S. 30:10(A)(3), State ex rel. Superior Oil Co. v. Texas Gas Transmission Corp., 242 La. 315, 136 So.2d 55 (1961), and State ex rel. Muslow v. Louisiana Oil Refining Corp., 176 So. 686 (La.App. 2d Cir.1937). In Superior, a mineral lessee in a force-pooled unit sought a writ of mandamus against a purchaser of unit production to recover the purchase price attributable to the lessee's 0.164146 share of unit production. The purchaser bought gas from the unit operator and other associated parties pursuant to a contract executed prior to pooling of the unit. The purchaser paid the unit operator for all gas purchased by it under the contract. The mineral lessee who brought suit, however, was not a party to the gas purchase contract and had received none of the proceeds. The mineral lessee was denied the remedy of mandamus because the amount owed to the lessee was not certain, definite, and fixed. This court did not rule on the merits of the lessee's claim, but did state that the lessee was "undoubtedly entitled to be reimbursed for the value of its share of the gas." Superior, 136 So.2d at 57.
This statement in Superior of the mineral lessee's right to reimbursement does not support the Taylors' interpretation of LSA-R.S. 30:10(A)(3). The relationship authorized by the statute between an unleased interest owner and a unit operator is significantly different from the relationship between the mineral lessee and the unit operator in Superior. The unit operator in Superior had no express contractual authority to sell the lessee's share of production or to accept payment on behalf of the lessee. Prior to the enactment of LSA-R.S. 30:10(A)(3), a unit operator's implied authority was at best uncertain with respect to selling production on behalf of owners who had not made separate arrangements to dispose of their shares. McNamara, Unitized ProductionRights of Operators and Non-Operators, 31 Inst. on Min.L. 194, 205-08 (1984); Heisler, Ownership, Disposition and Control of Production from Unitized or Jointly Owned Wells, 30 Inst. on Min.L. 1, 20-22 (1983). Enactment of the statute at least partially solved this problem by allowing unit operators to sell production on behalf of unleased interest owners. L. McDougal III, Louisiana Oil and Gas Law 330 (1988). The statutory authorization of such sales must necessarily eliminate any claim by unleased interest owners against purchasers who participate in the sales.
The second case, Muslow, is even less helpful to the Taylors. In Muslow, the court of appeal stated that "as a rule the true owner of the soil has a right of action against the purchaser of oil from one who first reduced it to possession." 176 So. at 690. The court, however, recognized that the sale of oil, along with rights incident to the sale, may be regulated by the legislature. In particular, the court recognized *892 that Act 64 of 1934, the predecessor of current LSA-R.S. 31:210, restricted the true owner's recourse to the producer where the purchaser made payment to a party in interest under a mineral lease granted by the last record owner holding under an instrument sufficient to transfer title. Muslow gives an example of the legislature's authority to protect purchasers of minerals against claims by mineral owners. The case lends little strength to the Taylors' argument that LSA-R.S. 30:10(A)(3) should not be interpreted so as to protect purchasers. We expressly hold that the Taylors' claim against Ashland as the purchaser of unit production is prohibited by LSA-R.S. 30:10(A)(3).
The Taylors also attempt to formulate their action as one based on unjust enrichment or for the recovery of a corporeal movable or its value under Civil Code articles 2301 and 2312. An action for unjust enrichment is allowed only when the plaintiff has no other remedy at law. The action must not be allowed to defeat the purpose of a rule of law directed to the matter at issue. Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967). In the present case, there is a statute directed to the matter at issue and, as described above, that statute gives the Taylors a cause of action against the unit operator and prohibits a cause of action against Ashland. A claim for unjust enrichment cannot be employed to modify the positive law as stated in LSA-R.S. 30:10(A)(3) and offers the Taylors no solace.
With respect to LSA-C.C. articles 2301 and 2312, the Taylors contend that they have an action as rightful owners for the return of their corporeal movable property from the party who unduly received it. These articles provide as follows:
Art. 2301. He who receives what is not due to him, whether he receives it through error or knowingly, obliges himself to restore it to him from whom he has unduly received it.
Art. 2312. If the thing unduly received is an immovable property or a corporeal movable, he who has received it, is bound to restore it in kind, if it remain, or its value, if it be destroyed or injured by his fault; he is even answerable for its loss by fortuitous event, if he has received it in bad faith.
An action under LSA-C.C. art. 2301 is based on the Taylors' claim that Ashland unduly received their share of unit production. As owners of an unleased interest who have not made arrangements to separately dispose of their share of production, the Taylors' right to take possession of their share of production is limited by the unit operator's right to sell their share. Upon sale by the unit operator, an unleased interest owner's right to recovery is limited to recovery of a pro rata share of the proceeds of the sale from the operator. The Taylors have no action to recover their share of production or the value of their share of production from Ashland, the purchaser, on the basis of articles 2301 and 2312 because of the provisions of LSA-R.S. 30:10(A)(3).
Accordingly, for the reasons stated, we reverse the Court of Appeal's decision which overruled Ashland's exception of no right and/or cause of action. We grant Ashland's exception of no right of action and dismiss the Taylors' action against Ashland. Costs of this appeal are taxed to the Taylors.
REVERSED.
LEMMON, J., dissents and assigns reasons.
NOTES
[1] John M. Taylor died June 12, 1986. John M. Taylor, Jr., and Frank S. Taylor were substituted as parties plaintiff for the deceased.
[2] E.C. Wentworth died during the pendency of these proceedings. An answer was filed by J.W. Seibert, III, the ancillary testamentary executor of the Succession of E.C. Wentworth.
[3] Wentworth argued that the trial court had correctly decided the effect of the Woodpecker release. Ashland argued the same point. Ashland also argued that the Taylors were limited by LSA-R.S. 30:10(A)(3) to an action against Wentworth, the unit operator, and that the Taylors had not satisfied the elements of an action for unjust enrichment. The Allen parties adopted by reference Ashland's application. This court remanded the case to the court of appeal solely on the issue of whether the Taylors had a cause of action or right of action against Ashland. Upon remand, the court of appeal properly omitted any further discussion of the Woodpecker release and limited its discussion to the other points raised by Ashland.