619 So.2d 881 (1993)
John Marvin TAYLOR, et al., Plaintiffs-Appellants,
v.
Wedon T. SMITH, Defendant-Appellee.
No. 92-988.
Court of Appeal of Louisiana, Third Circuit.
June 2, 1993.
*882 Mark Barker Oliver, Lafayette, George F. Griffing, Jonesville, for John Marvin Taylor et al.
Josiah William Seibert, III, Vidalia, for Wedon T. Smith.
Before DOMENGEAUX, C.J., and YELVERTON and SAUNDERS, JJ.
SAUNDERS, Judge.
This is an appeal by John Marvin Taylor, Jr. and Frank Scott Taylor, plaintiffs and appellants herein, from the trial court's grant of summary judgment and an exception of prescription in favor of Wedon T. Smith, defendant and appellee.

FACTS
The trial court set forth the relevant facts in his reasons for judgment, as follows:
"This action was brought by the Petitioners on March 22, 1991, alleging a cause of action against the Defendant as the unit operator of a well known as the J.H. Allen Number 1 Well, Serial Number 163956 in Section 27, Township 7 North, Range 3 East, LaSalle Parish, Louisiana. Petitioners ground their action in the principles of quasi-contract and demand an accounting and to recover the value of proceeds of the unit production allocable to their land in Unit 71B.
"The land the Taylors own together with the appurtenant mineral rights is situated in Section 40, Township 7 North, Range 3 East, LaSalle Parish, Louisiana. The Commissioner of Conservation for the State of Louisiana issued Order Number 24 on October 22, 1940, and Order Number 24-D on July 3, 1942, which established Unit Number 71B in the Nebo-Hemphill Field, LaSalle Parish, Louisiana. The Taylors own 22.85 acres of Unit 71B.
"On June 7, 1979, E.C. Wentworth and Wedon Smith doing business as Smith-Wentworth, drilled a well known as the J.H. Allen Number 1 Well described above. The well was situated in Unit Number 71B, but on a tract owned by parties other than the petitioners. The well was completed on August 30, 1979, and went into production shortly thereafter. It is alleged Smith-Wentworth operated the well from the date it was put into production until July, 1983, when ... *883 [David New Operating Company, Inc.] assumed the function of operator and has continuously operated the well to the present.
"Commissioner of Conservation Order Number 781-F dated January 1, 1986, established Unit 71B for the Wilcox F. Zone in the Nebo-Hemphill Field. The J.H. Allen Well Number 1 is situated within Unit 71B and is producing from the unitized sand. The Taylors have shared in production from the J.H. Allen Number 1 Well in the ratio that their land unit bears to the entire area covered by the unit from the time period commencing May 31, 1986, through the present. The petitioners allege that they are entitled to share in the production from the J.H. Allen Number 1 Well from the date of first production to May 31, 1986. It is against this factual background that the Defendant has filed a Peremptory Exception of Prescription alleging that any action the Taylors may have against it is grounded not in contract (allowing a ten year prescriptive period) but in tort (allowing but one year to file the action.)"
Smith additionally filed a motion for summary judgment against the Taylors contending that he was never the operator of the well at issue. Instead, Smith claims that David New Operating Company, Inc. was the operator during all periods of production and, therefore, "any cause of action relative to any alleged accounting claim of Plaintiffs should be directed to David New Operating Co., Inc."
We find that the trial court erred in both the granting of the defendant's motion for summary judgment and in granting defendant's exception of prescription and, thus, we reverse.

SUMMARY JUDGMENT
The cause of action which forms the basis of this lawsuit is outlined in LSA-R.S. 30:10(A)(3) as follows:
(3) If there is included in any unit created by the commissioner of conservation one or more unleased interests for which the party or parties entitled to market production therefrom have not made arrangements to separately dispose of the share of such production attributable to such tract, and the unit operator proceeds with the sale of unit production, then the unit operator shall pay to such party or parties such tract's pro rata share of the proceeds of the sale of production within one hundred eighty days of such sale.
The Louisiana Supreme Court in Taylor v. Woodpecker Corporation, 562 So.2d 888 (La.1990), stated that the owner of an unleased mineral interest has a cause of action against the operator for an accounting for production sold from the unit or well.
In this action, Smith filed a motion for summary judgment alleging that he had never been the operator of the J.H. Allen No. 1 Well from the date of first production through May 31, 1986, and, therefore, should be dismissed from plaintiffs' action for an accounting.
The jurisprudence regarding this court's review in an appeal from a grant of a motion for summary judgment was recently set forth in Schroeder v. Board of Sup'rs, 591 So.2d 342, 345 (La.1991) as follows:
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. GATX Aircraft Corp. v. M/V Courtney Leigh, 768 F.2d 711, 714 (5th Cir.1985); McCrae v. Hankins, 720 F.2d 863, 865 (5th Cir.1983); Wright, Miller & Kane, Federal Practice and Procedure, § 2716, at 125 (Supp.1991). A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966; Vermilion Corp. v. Vaughn, 397 So.2d 490, 493 (La.1981). Because the mover has the burden of establishing that no material factual issue exists, inferences to be drawn from the underlying facts contained *884 in the materials before the court must be viewed in the light most favorable to the party opposing the motion. Vermilion Corp., supra; see also United States v. Diebold, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); Thornbrough v. Columbus and Greenville R. Co., 760 F.2d 633, 640 (5th Cir.1985). The party who defended against the motion for summary judgment must have his properly filed allegations taken as true and must receive the benefit of the doubt when his assertions conflict with those of the movant. Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); Thornbrough, supra; Wright, Miller & Kane, supra.

In support of his motion for summary judgment, Smith filed affidavits executed by himself, James Wentworth, Judge Leo Boothe and Hugh McDonald. The affidavits, as a whole, alleged that the business name of Smith-Wentworth was utilized in securing the drilling permit to actually drill the well, but that Smith and Wentworth had no intention of operating the well if it became a producing well. They contend that, at the time the well began producing, the operations were taken over by H. & N. Operating Co., whose name was later changed to David New Operating Company. The actual drilling permit filed with the Commissioner of Conservation Office was amended changing the name of the operator from Smith-Wentworth to David New Operating Company in 1983, although the well was drilled in 1979.
Attached to Smith's and Judge Boothe's affidavits are copies of operating statements billed to H. & N. Operating Co. and David New Operating Company. These bills reflect the name change from H. & N. Operating Co., Inc. to David New Operating Company, Inc. in March of 1983.
Records from the well file of the Office of Conservation, submitted by both parties, show both Smith-Wentworth and H. & N. Operating Co. as operators. The original drilling permit was not amended, in the Office of Conservation well file, to designate David New Operating Company as the operator until August 15, 1983. Defendant contends that this amendment took place in 1983 because, at that time, H. & N. Operating Co. changed its corporate name to David New Operating Company.
Nevertheless, the public record, in the Office of Conservation, reveals that Smith-Wentworth is designated as the well operator until August 15, 1983. As such, we find that, on the face of the documents submitted by movant, Smith, an issue of fact remains as to who was the operator prior to August 15, 1983.
In opposition to Smith's motion for summary judgment, plaintiffs submitted the affidavit of John Aldridge, the chief engineer of the Office of Conservation, who stated that the person designated as the operator is considered the operator by the Office of Conservation, until officially amended. Aldridge's affidavit stated that the Office of Conservation looks at the operator of record as the officially designated and responsible operator in administrative enforcement actions, until a change of operatorship is filed with the Office of Conservation.
We find that the trial court erred in finding that no genuine issue of material fact remains as to the identity of the operator from the time of the well's first production in 1979 through August 15, 1983, at which time David New Operating Company, Inc. amended the official records of the Office of Conservation and named itself as operator in place of Smith-Wentworth.
The original drilling permit was issued in favor of the entity called Smith-Wentworth, an unincorporated entity, as the operator of the well. No amendment was made in this filing until August of 1983, when David New Operating Company became the operator of record. Insofar as the Office of Conservation is the "public record" as to who is the operator of record, third parties are entitled to rely upon this "public record" in actions against an operator, without examining the entire well file in an attempt to determine the responsible party.
Additionally, we question why there was no affidavit filed, in support of Smith's motion for summary judgment, from H. & *885 N. Operating Co. (now David New Operating Company) stating that they were the true and actual operator during the period in question.
As such, we reverse the grant of summary judgment in favor of Wedon Smith, defendant and appellee, herein.

EXCEPTION OF PRESCRIPTION
Smith also filed an exception of prescription alleging that the Taylors' cause of action sounded in tort, specifically conversion, and was prescribed by one (1) year liberative prescription. Smith contends that the Taylors' cause of action arose in 1979, when production began and royalties were allegedly first owed the Taylors. This lawsuit was not filed until 1991.
LSA-C.C. art. 3499 states:
Unless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years.
In reviewing the grant of an exception of prescription, the character of the action given by the plaintiff in his pleadings, determines the prescription applicable to it. See Northcott Exploration Co. v. W.R. Grace & Co., 430 So.2d 1077 (La.App. 3d Cir.1983); Starns v. Emmons, 538 So.2d 275 (La.1989).
"The nature of a cause of action must be determined before it can be decided which prescriptive term is applicable. State Department of Highways v. City of Pineville, 403 So.2d 49, 54 (La.1981)."
Hampton v. Hibernia Nat. Bank, 598 So.2d 502, 503 (La.App. 2d Cir.1992).
The nature of an obligation in Louisiana, for the purpose of determining the applicable prescriptive period, is either contractual, quasi-contractual, delictual, quasi-delictual or legal. See Dean v. Hercules, Incorporated, 328 So.2d 69, 72 (La.1976).
LSA-C.C. art. 1757 states:
Obligations arise from contracts and other declarations of will. They also arise directly from the law, regardless of a declaration of will, in instances such as wrongful acts, the management of the affairs of another, unjust enrichment and other acts or facts.
The Taylors' petition, in pertinent part, states as follows:
"Pursuant to the pooling and allocation requirements of Orders No. 24 and 24-D, Plaintiffs are entitled to share in the production from the J.H. Allen No. 1 Well, and have, in fact, been sharing in same from May 31, 1986, to the present, pursuant to Order No. 781-F, issued by the Commissioner of Conservation.
7.
The J.H. Allen No. 1 Well went into production in 1979 after completion on August 30, 1979, and Plaintiffs are entitled to an accounting of said production allocable to Plaintiffs' land in Unit 71B in the ratio that the Plaintiffs' land in said unit bears to the full area of said unit, from the date of first production to the date David New Operating Co., Inc. became operator of the above referenced well, and Defendant is indebted unto Plaintiffs in a sum equal to the value of that production.
WHEREFORE, Plaintiffs, John Marvin Taylor, Jr. and Frank Scott Taylor, pray that a copy of this Petition be served upon the Defendant, Wedon T. Smith, and after due proceedings hereon, that there be:
(1) Judgment in favor of Plaintiffs and against Defendant ordering Defendant to render an accounting to Plaintiffs for all oil and gas produced allocable to Plaintiffs' lands in Unit 71B in the ratio that the Plaintiffs' land in said unit bears to the full area of said unit, from date of first production from the J.H. Allen No. 1 Well to the date David New Operating Co., Inc. became operator of said well; and,
(2) Judgment in favor of Plaintiffs and against Defendant in an amount equal to the value of all oil and gas produced allocable to Plaintiffs' lands in Unit 71B from date of first production from the J.H. Allen No. 1 Well to May 31, 1986, together with legal interest from date due until paid, reasonable attorney fees and all costs of this proceeding."
*886 The trial court, in determining that under any theory of recovery, the Taylors' cause of action had prescribed, stated, in its reasons for judgment, as follows:
"Petitioners base their argument on LSA R.S. 30:10(3) that reads:
"If there is included in any unit created by the commissioner of conservation one or more unleased interests for which the party or parties entitled to market production therefrom have not made arrangements to separately dispose of the share of such production attributable to such tract, and the unit operator proceeds with the sale of unit production, then the unit operator shall pay to such party or parties such tract's pro rata share of the proceeds of the sale of production within one hundred eighty days of such sale." (Emphasis added).

. . . .
The operator has effectively taken what is not his. An action to recover that which has been taken is grounded in tort. A cause of action to recover royalty interest wrongfully sold or converted must be filed within one year of the taking or conversion. The last unauthorized sell or taking of the production occurred prior to May 31, 1986. Accordingly, a cause of action filed March 22, 1991, for a wrongful sell on or before May 31, 1986, has prescribed. Defendants peremptory exception of prescription is granted....
Petitioner also argues their claim of a ten year prescriptive period should stand based in quasi-contract. This Court rejects that argument. A quasi-contractual obligation is based on the principals of unjust enrichment. Minyard v. Curtis Products, Inc., 205 So.2d 422 (La.1967); Succession of Bankston, 405 So.2d 1189 (1st Cir.1981).
"The Taylors also attempt to formulate their action as one based on unjust enrichment or for the recovery of a corporeal movable of its value under Civil Code articles 2301 and 2312. An action for unjust enrichment is allowed only when the plaintiff has no other remedy at law. The action must not be allowed to defeat the purpose of a rule of law directed to the matter at issue. Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967). In the present case, there is a statute directed to the matter at issue and, as described above, that statute gives the Taylors a cause of action against the unit operator and prohibits a cause of action against Ashland. A claim for unjust enrichment cannot be employed to modify the positive law as stated in LSA-R.S. 30:10(A)(3) and offers the Taylors no solace. Taylor vs. Woodpecker Corp. (562 So.2d 888 (La.1990)).
LSA-R.S. 30:10(A)(3) creates an obligation for the unit operator to pay the parties their pro-rata share of the proceeds within 180 days. A violation of the statutory obligations results in a conversion or wrongful taking. A cause of action to enforce the statute is found in tort."
We disagree with the analysis of the trial court and reverse the grant of Smith's exception of prescription.
In Taylor v. Woodpecker Corp., 562 So.2d 888 (La.1990), a case involving the same plaintiffs and the same well, the Louisiana Supreme Court held that an unleased owner's sole remedy for a share of production from a unit well is from the operator, due to the enactment of LSA-R.S. 30:10(A)(3), set forth above, which provides that the unit operator must account to an unleased landowner within the unit for his share of production from the sale of the unit production. In Taylor v. Woodpecker, supra, the Taylors could not seek recovery from a purchaser of production, under a theory of unjust enrichment, when there remained a remedy at law, for an accounting and a proportionate share of production, from the operator of the unit.
Although the nature of the unleased owner's remedy is not delineated by the Woodpecker court, it is clear that the Louisiana Supreme Court, intended that the remaining cause of action against the operator be based upon a breach of contractual obligation.
*887 The Taylors, in Woodpecker, supra, argued that they, as unleased interest owners, had a cause of action against an oil purchaser based upon State ex rel. Superior Oil Co. v. Texas Gas Transmission Corporation, 242 La. 315, 136 So.2d 55 (1961), a case involving a mineral lessee's action against a purchaser to recover the lessee's proportionate share of unit production. The Louisiana Supreme Court, in distinguishing Superior, supra, stated at page 891:
"This statement in Superior of the mineral lessee's right to reimbursement does not support the Taylors' interpretation of LSA-R.S. 30:10(A)(3). The relationship authorized by the statute between an unleased interest owner and a unit operator is significantly different from the relationship between the mineral lessee and the unit operator in Superior. The unit operator in Superior had no express contractual authority to sell the lessee's share of production or to accept payment on behalf of the lessee. Prior to the enactment of LSA-R.S. 30:10(A)(3), a unit operator's implied authority was at best uncertain with respect to selling production on behalf of owners who had not made separate arrangements to dispose of their shares. McNamara, Unitized Production Rights of Operators and Non-Operators, 31 Inst. on Min.L. 194, 205-08 (1984); Heisler, Ownership, Disposition and Control of Production from Unitized or Jointly Owned Wells, 30 Inst. on Min.L. 1, 20-22 (1983). Enactment of the statute at least partially solved this problem by allowing unit operators to sell production on behalf of unleased interest owners. L. McDougal III, Louisiana Oil and Gas Law 330 (1988). The statutory authorization of such sales must necessarily eliminate any claim by unleased interest owners against purchasers who participate in the sales."
In a situation, as in this case, where there is no written agreement between the owner and operator, LSA-R.S. 30:10(A)(3) has supplied the terms of the contract. Essentially, the operator is entitled to sell the owner's proportionate share of production, but the operator must pay the owner within 180 days of the sale or found to be in breach of the statutory authorization to sell expressly set out in LSA-R.S. 30:10(A). See also Northcott Exploration Co. v. W.R. Grace & Co., supra.
The statute gives the owner a cause of action in quasi-contract under LSA-C.C. art. 2292, et seq., insofar as the operator, in selling the owner's proportionate share of the oil produced, is acting as a negotiorum gestor or manager of the owner's business in selling the oil produced.
LSA-C.C. art. 2292, et seq., states in pertinent part, as follows:
Art. 2292. Certain obligations are contracted without any agreement, either on the part of the person bound or of him in whose favor the obligation takes place.
Some are imposed by the sole authority of the laws, others from an act done by the party obliged, or in his favor.
In the case sub judice, we are confronted with an obligation of the unit operator which was imposed, "without any agreement" but instead, "imposed by the sole authority of the laws."
LSA-C.C. art. 2293 provides us with a general definition of quasi-contracts, as follows:
Art. 2293. Quasi contracts are the lawful and purely voluntary act of a man, from which there results any obligation whatever to a third person, and sometimes a reciprocal obligation between the parties.
LSA-C.C. art. 2294, although not exclusive in its list of potential quasi-contracts, continues as follows:
Art. 2294. All acts, from which there results an obligation without any agreement, in the manner expressed in the preceding article, form quasi contracts. But there are two principal kinds which give rise to them, to wit: The transaction of another's business, and the payment of a thing not due.
LSA-C.C. art. 2295, et seq., sets forth the quasi-contract which results from the transaction by one of another's business. LSA-C.C. art. 2295 states:

*888 Art. 2295. When a man undertakes, of his own accord, to manage the affairs of another, whether the owner be acquainted with the undertaking or ignorant of it, the person assuming the agency contracts the tacit engagement to continue it and to complete it, until the owner shall be in a condition to attend to it himself; he assumes also the payment of the expenses attending the business.
He incurs all the obligations which would result from an express agency with which he might have been invested by the proprietors.
As such, we find that, pursuant to LSA-R.S. 30:10(A)(3), and under the auspices of the Louisiana Supreme Court's in Taylor v. Woodpecker Corp., 562 So.2d at 892, set forth above, the Taylors' cause of action against the unit operator sounds in quasi-contract and is subject to a liberative prescription of ten (10) years.
For the purpose of the exception of prescription, we find that the trial court erred in finding that the Taylors' only cause of action was in conversion and, therefore, subject to a liberative prescription of one year.
An action in conversion would not be appropriate when the operator fails to give an accounting and pay the owner, insofar as the operator, pursuant to LSA-R.S. 30:10(A)(3), has a legal right to take and sell the owner's proportionate share of production. Therefore, the sale of the production from the well would not be a wrongful taking or conversion. See Hampton v. Hibernia Nat. Bank, 598 So.2d at 504. This right of the operator to sell the oil, granted by statute, is abused when and if the operator fails to give an accounting and pay the owner all funds due, if any.
Based upon the foregoing, the judgment of the trial court is hereby reversed. Judgment is rendered in favor of plaintiffs, John Marvin Taylor, Jr. and Frank Scott Taylor, and against defendant, Wedon T. Smith, in accordance with the reasons set forth above.
Costs to be paid at the trial level and on appeal by defendant-appellee, Wedon T. Smith.
REVERSED AND REMANDED.